**Konstantin IGNATOV, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States of America, Respondent.**

No. 02–2995.

United States Court of Appeals, Third Circuit.

Argued April 1, 2003.

Decided Aug. 6, 2003.

Erica S. Gonzalez [Argued], Jon Landau, Baumann, DeSeve & Landau, Philadelphia, PA, for Appellant.

Joan E. Smiley [Argued], Richard M. Evans, Terri J. Scadron, John M. McAdams, Jr., United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Appellee.

Before: MCKEE, SMITH, and COWEN, Circuit Judges.

OPINION

SMITH, Circuit Judge.

## I. INTRODUCTION

Petitioner Konstantin Ignatov appeals the denial of his application for asylum or withholding of removal under the Immigration and Nationality Act ("INA"). Ignatov alleges that the Immigration Judge's

decision to grant his attorney's motion to withdraw on the day of his asylum hearing and without granting him a continuance to obtain new counsel violated his statutory right to counsel and his Fifth Amendment right to due process. Because we will agree that petitioner's statutory right to counsel was violated, we reverse and remand for further proceedings consistent with this opinion.

## II. FACTS AND PROCEDURAL HISTORY

Konstantin Ignatov immigrated from Russia to the United States in 1992 on a B-1 visa. In the fall of 1993, Ignatov submitted an application for asylum or withholding of removal to the Immigration and Naturalization Service ("INS"), in which he stated that he was being persecuted because he refused to join the militia.

On April 1, 1996 he received his first written notice advising him of his right to obtain counsel to represent him at the deportation proceedings. He then appeared before the Immigration Judge ("IJ") on October 3, 1996 and was granted a continuance until October 31, 1996 to obtain counsel. On October 29, attorney Jewls Rogowska entered an appearance on behalf of Ignatov and requested a continuance to prepare his case.[1]

On December 5, 1996, Ignatov appeared with counsel at the master calendar hearing, at which time he admitted deportability and requested asylum or withholding of removal. Counsel informed the court that she would be submitting a new asylum application explaining that petitioner was subject to religious persecution, and that Ignatov's refusal to join the militia was based on his religious beliefs. Although

she was given until January 6, 1997 to file the application, she never did so.

At the master calender hearing, the IJ scheduled Ignatov's asylum hearing for October 17, 1997. On October 14, 1997 Ignatov's counsel submitted a motion to withdraw. Counsel's motion explained that Ignatov had never entered into a contract for representation after the master calendar hearing, had not contacted her to prepare his case since the last hearing, and had informed her on October 11, 1997 that he would not pay additional counsel fees and that he would be seeking representation through a volunteer organization. Counsel also stated in the motion that "[r]espondent has been well informed of the potential consequences if he does not prepare his case in a timely manner or obtain adequate representation." [A.R. 164].

Although her withdrawal motion had not yet been granted, counsel failed to appear at the asylum hearing on October 17. The IJ, nonetheless, granted counsel's motion. Prior to ruling on the motion, the IJ had the following exchange with Ignatov:

Q [IJ]: Why did you wait until a week before your hearing to contact your attorney and tell her that you're not going to pay her for her fees?

A: Well, the only reasons is because my family, they refused to help me and sending me any papers and right now, like last week, I talked to them and they agreed to help me.

Q: Well, sir, your case has been on my docket—

A: For a year

Q: Since—a year ago ... I continued the case for 10 months—10½ months until today for you to present your case and now you're coming in and saying

1. Ignatov subsequently received two more written notices advising him of his right to obtain counsel, on forms dated October 31, 1996 and December 5, 1996.

that you—you're not prepared. That doesn't wash with the court sir, I can't … accept that. You've … started your deportation proceedings over a year ago, you come in, fire your lawyer a week before the hearing and expect me to continue the case and I'm not going to continue it, sir. Today you're going to speak for yourself.

[A.R. 60–61].

The IJ proceeded with the hearing, at which Ignatov testified that he suffered past religious persecution and that he would be subject to future persecution based on his membership in the Baptist church. Ignatov testified, *inter alia*, that he had met with other Baptists in a park for a prayer vigil and that they were physically attacked by a group called Pamiat. While this took place, police simply watched and did nothing. Ignatov was injured so severely that he was required to undergo hospital treatment. When he attempted to report the incident to the police, however, they refused to investigate. He subsequently received two phone calls from Pamiat which left him in such fear that he left his parent's home and sought refuge with a friend. Ignatov also explained that he did not read his initial asylum application, but merely signed it, and that the core of his claim was still religious persecution because his refusal to join the militia had been based on his religious beliefs. The IJ concluded that Ignatov was not credible and did not establish either past persecution or a well-founded fear of future persecution. Accordingly, the IJ denied Ignatov's requests for asylum and withholding of removal.

On June 21, 2002, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision, without opinion, pursuant to 8 C.F.R. § 3.1(a)(7).

## III. JURISDICTION

Because Ignatov first applied for asylum prior to September 30, 1996, the IJ had subject matter jurisdiction under former sections, 8 U.S.C. §§ 1158, 1253(h) (1995). *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 (1996) ("IIRIRA"), Section 309(c)(1)(B) (in the case of "an alien who is in exclusion or deportation proceedings as of the effective date of the statute … the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments"). The Board of Immigration Appeals had appellate jurisdiction pursuant to 8 C.F.R. § 3.1(b)(2) (1995). This court has jurisdiction to review the order of the Board of Immigration Appeals pursuant to former Section 106(a) of the INA, 8 U.S.C. § 1105a(a). *See Chang v. INS*, 119 F.3d 1055, 1059 (3d Cir.1997) (noting that cases where the initial deportation order was issued before September 30, 1996 are governed by former section 106(a) despite its repeal).

## IV. STANDARD OF REVIEW

Where the BIA summarily affirms the IJ's decision, we "must then review the decision of the IJ." *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir.2002). We review a judge's decision to grant a motion to withdraw or to deny a continuance for appointment of new counsel for abuse of discretion. *See Ungar v. Sarafite*, 376 U.S. 575, 589–90, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) ("the matter of continuance is traditionally within the discretion of the trial judge"); *United States v. Gibbs*, 190 F.3d 188, 207 n. 10 (3d Cir.1999) (reviewing denial of motion for continuance to obtain new counsel for abuse of discretion); *Ohntrup v. Firearms Center Inc.*, 802 F.2d 676, 679 (3d Cir.1986) (reviewing denial of motion of counsel to withdraw for abuse of discre-

tion). A "court abuses its discretion if its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir.2002) (holding that district court abused its discretion in denying appointed counsel to indigent civil litigant) (internal quotations omitted).

## V. LEGAL ANALYSIS

A petitioner in a removal proceeding has the statutory right to be represented by counsel at his or her own expense. *See* 8 U.S.C. § 1362 (1995) ("In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose"); 8 U.S.C. § 1252(b)(2) (1995) (same). The INS regulations also require that the alien be notified of his right to representation at no expense to the government, and be provided with a list of free legal service programs. 8 C.F.R. §§ 242.1(c), 242.10, 242.16(a) (1995).

The complexity of deportation proceedings make legal representation "especially important." *Ardestani v. INS*, 502 U.S. 129, 138, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). Moreover, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar*, 376 U.S. at 589. Merely informing a petitioner of his statutory right to counsel is insufficient absent

adequate time to obtain such counsel. *See, e.g., Castaneda–Delgao v. INS*, 525 F.2d 1295, 1300 (7th Cir.1975) (two day continuance for petitioners to obtain counsel was insufficient and denying request for additional continuance and proceeding without counsel was an abuse of discretion.)

Here, counsel did not file a motion to withdraw until a few days before the hearing, and petitioner was not afforded any time following the granting of that motion to obtain new counsel.[2] We recently reviewed a similar allegation of deprivation of right to counsel in *Ponce–Leiva v. Ashcroft*, 331 F.3d 369 (3d Cir.2003). There, the petitioner appeared with counsel at the scheduling hearing, stated his intent to seek asylum, and was assigned a date eight months away for a merits hearing. In his application, Ponce–Leiva stated that he was seeking asylum because he could not find work in his country and if he returned home he would be homeless because his family could not support him. This was not a valid basis for asylum under 8 U.S.C. §§ 1158(b) or 1101(a)(42)(A), as these provisions require that the petitioner must be "unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1101(a)(42)(A). Ponce–Leiva never suggested that he had any other basis for seeking asylum.

Two days before the merits hearing, Ponce–Leiva's counsel sent a letter to the immigration court requesting a continuance and informing the court that counsel

---

**2.** The government argues that petitioner was given repeated continuances to obtain counsel. In fact, only one continuance (for one month) was granted in October 1996 to allow the appellant to obtain counsel. Because it occurred early in the proceeding, that continuance is not relevant to petitioner's ability to obtain counsel in October 1997 after his initial counsel withdrew.

would be unavailable on the date of the hearing. The IJ denied counsel's request, and the merits hearing went forward as scheduled. Ponce–Leiva's counsel did not appear at the hearing. The IJ denied Ponce–Leiva's request for asylum, and elaborated on his reasons for denying the continuance request, explaining that counsel did not appear to be providing any benefit to Ponce–Leiva, such as advising him that inability to find work was not a valid basis to stay in the country. The BIA affirmed and petitioner appealed, arguing, *inter alia,* that the absence of counsel violated his statutory right to counsel and his due process rights.

We affirmed the decision of the BIA, holding that the IJ did not abuse his discretion in deciding that Ponce–Leiva's right to counsel was not violated, in part because the IJ "made a reasonable determination that in light of counsel's previous deficient performance with respect to Ponce–Leiva, his absence at the hearing would have made no difference." *Id.* at 375. We noted that:

> "The question whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case." *Baires v. INS,* 856 F.2d 89, 91 (9th Cir.1988) (citation omitted). In this case, one of the circumstances which the immigration judge apparently factored into his decision to deny the continuance was the facial lack of merit in Ponce–Leiva's application for asylum. This initial impression was borne out by the evidence presented at the hearing. It

was clear at the outset, however, that Ponce–Leiva's claim for asylum was based solely on economic reasons and therefore would not merit relief. By making this observation, we do not intend to imply that a continuance must be granted if a claim is facially meritorious. We do believe it is reasonable and proper for an immigration judge to consider the apparent lack of merit in a claim when deciding to proceed without counsel.

*Id.* at 377.

Here, unlike Ponce–Leiva, Ignatov introduced a facially valid basis for asylum: persecution on the grounds of his religious beliefs.[3] Therefore, counsel's presence at the hearing could have made a difference to the outcome. Ignatov argues that the outcome of the hearing would have been different with counsel present because an attorney would have been more articulate and able to explain why his asylum application mentioning refusal to join the militia was consistent with his claim of religious persecution. Ignatov did not testify about his refusal to join the military until it was raised in cross-examination, and the IJ specifically mentioned this failure as a basis for his adverse credibility finding. In addition, counsel could have elicited clarification and additional testimony which might have prevented the IJ from disbelieving specific portions of Ignatov's testimony. For example, the IJ stated that he did not believe that Ignatov would flee after receiving the two phone calls from Pamiat, especially since Ignatov did not specifically mention any threats contained in those phone calls. Ignatov argues that he did not describe the threats in those calls because he was not asked to elabo-

---

**3.** Although petitioner's initial application for asylum only discussed his refusal to serve in the militia, counsel indicated on the record that she intended to file an updated petition for asylum explaining that petitioner's inability to serve in the militia was a result of his religious beliefs. Moreover, Ignatov testified about his religious persecution at the hearing.

rate by the IJ, but that such details would have been elicited had counsel been presenting his case.

Because Ignatov's asylum claim had facial merit and because the assistance of counsel might have changed the outcome of the proceeding, the IJ violated Ignatov's statutory right to obtain counsel at his own expense by granting the motion to withdraw on the day of the hearing. The timing of the ruling did not provide Ignatov with any time to secure new counsel. By ruling in this manner, the IJ abused his discretion.[4] *Cf. United States v. Kikumura*, 947 F.2d 72, 79 (3d Cir.1991) (holding that district court did not abuse its discretion in denying continuance to obtain counsel of choice where defendant had a month after counsel's motion to withdraw was granted to obtain new counsel). Remand is warranted.[5]

## VI. CONCLUSION

For the foregoing reasons, the BIA's order adopting the IJ's decision was an abuse of discretion. This case will be remanded to the BIA, with leave to remand to the IJ for further proceedings consistent with this opinion

---

4. The IJ's decision rested on an errant conclusion of law: that petitioner's statutory right to obtain counsel had been satisfied.

5. Because we hold that the IJ abused his discretion in granting counsel's motion to withdraw on the day of the hearing, we need not address whether the IJ's actions also violated petitioner's due process right to a fundamentally fair hearing.