Mario Antonio Portillo
**BAIRES, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 87–7081.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1988.

Decided Sept. 1, 1988.

Robert Andrew Harkness, Smith &
Smith, San Francisco, Cal., for petitioner.

Alison R. Drucker and Joan E. Smiley,
U.S. Dept. of Justice, Washington, D.C.,
for respondent.

Before SCHROEDER, REINHARDT
and LEAVY, Circuit Judges.

REINHARDT, Circuit Judge:

This case arises on a petition for review
of a deportation order. Because we find
that the petitioner's statutory and regula-
tory procedural rights were violated, we
reverse the order and remand for further
proceedings.

FACTS AND PROCEEDINGS BELOW

Petitioner Portillo Baires, a citizen of El
Salvador, entered the United States with-
out inspection on February 3, 1985, near
Nogales, Arizona. He was arrested and
taken to the Immigration and Naturaliza-
tion Service ("INS") detention center in
Florence, Arizona. His initial deportation
hearing was held on February 21 in Flor-
ence. Portillo Baires appeared before Im-
migration Judge William F. Nail, Jr., with-
out counsel; he required the services of a

Spanish language interpreter. In response to Judge Nail's questions, Portillo Baires expressed the desire to find a lawyer and to apply for asylum in the United States. Accordingly Judge Nail continued the hearing. Portillo Baires' request for asylum was submitted on February 25 and his asylum hearing was set for April 15.

On March 19, Portillo Baires was released on bond from INS custody. He traveled to San Francisco, where he had family and friends, and there retained attorney Robert Andrew Harkness to represent him on a pro bono basis. Harkness prepared a notice of appearance on April 9, the day he was retained; the INS received the notice on April 10. On the same day, Harkness also filed a request for a continuance and change of venue. He noted that he and Portillo Baires had had time to communicate only briefly. He also noted that Portillo Baires was then living and working in San Francisco and that his case required the testimony of witnesses who were located in the San Francisco area. On these grounds, he requested that Portillo Baires' hearing be continued to a later date and held in San Francisco rather than Florence. Judge Nail denied both requests by telephone on April 10.

Portillo Baires traveled back to Florence for his April 15 asylum hearing. Harkness arranged for attorney David Myers to appear with Portillo Baires. At the hearing, Myers, acting for Harkness, submitted a second request for a continuance and change of venue. In that request, Harkness explained that he had arranged for the testimony of an expert witness but that the expert, who lived in the San Francisco area, could not travel to Florence and could not prepare written testimony in time for the April 15 hearing. Harkness also stated that he was contacting other witnesses in the San Francisco area but could not complete any arrangements with them before April 15. Myers advised the immigration judge of the names of the three potential witnesses and their ability to testify with respect to the facts of Portillo Baires' case.

Once again, Judge Nail denied the request. As the sole ground for the denial,

he said that the request had been made too close to the scheduled hearing date to allow him to arrange for some other use of the court's allotted time. He faulted Portillo Baires and Harkness for submitting the request only five days before the scheduled hearing date, and declared, without elaboration, that he found the argument for change of venue "not persuasive." He also noted that he would accept the witnesses' testimony in written form. Judge Nail then proceeded to conduct the hearing and, at its conclusion, held that Portillo Baires was not entitled to asylum or withholding of deportation. The BIA subsequently affirmed Judge Nail's decision.

Portillo Baires petitions this court for review of the BIA's order on several grounds. He asserts that Judge Nail applied the wrong standard to his asylum claim and that he is entitled to both asylum and withholding of deportation as a matter of law. He also contends that his constitutional and statutory procedural rights were violated in several ways: by the judge's denial of his request for a continuance and change of venue; by the judge's denial of his request to subpoena the author of an advisory opinion letter submitted by the State Department's Bureau of Human Rights and Humanitarian Affairs; and by the immigration court's failure to provide Harkness, his attorney of record, with a copy of the hearing transcript.

We grant Portillo Baires' petition for review and reverse the judgment of the BIA on the ground that Judge Nail's denial of Portillo Baires' request for a continuance and change of venue violated his statutory and regulatory procedural rights. Accordingly we need not reach his other claims.

## ANALYSIS

■ Aliens do not have a sixth amendment right to be represented in deportation proceedings. *Castro-O'Ryan v. United States Department of Immigration and Naturalization*, 847 F.2d 1307, 1312 (9th Cir.1988) (citing *Ramirez v. INS*, 550 F.2d 560, 563 (9th Cir.1977)). However, the fifth amendment does guarantee aliens due process in those proceedings. *Rios-Berrios v.*

*INS,* 776 F.2d 859, 862 (9th Cir.1985) (citing *United States v. Barraza-Leon,* 575 F.2d 218, 220 (9th Cir.1978)). Moreover, aliens are entitled by statute and regulation to certain specified procedural protections.[1] In particular, they have the statutory right to be represented by counsel of their choice, at no expense to the government. *Castro-O'Ryan,* 847 F.2d at 1312; *Colindres-Aguilar v. INS,* 819 F.2d 259, 260–61 n. 1 (9th Cir.1987); 8 U.S.C. §§ 1252(b), 1362 (1982); 8 C.F.R. § 242.10 (1988).[2] In addition, they are guaranteed a reasonable opportunity to present evidence in their own behalf. 8 U.S.C. § 1252(b) (1982); 8 C.F.R. § 242.16(a) (1988). Denial of these statutory rights may constitute an abuse of discretion requiring remand. *See Castro-O'Ryan,* 847 F.2d at 1312 (right to counsel); *Castro-Nuno v. INS,* 577 F.2d 577, 578–79 (9th Cir.1978) (same). Indeed, if the prejudice to the alien is sufficiently great, the constitutional guarantee of due process may be violated. Castro-O'Ryan, 847 F.2d at 1313. However, we need not reach the constitutional issue if we find that a statutory right was violated and that the violation caused prejudice to the alien. *Id.; see United States v. Cerda-Pena,* 799 F.2d 1374, 1377 n. 3 (9th Cir.1986).[3]

In this case, Portillo Baires argues that Judge Nail's denial of his request for a continuance and change of venue violated his rights to be represented by his counsel of choice and to present evidence in his own behalf. The regulations provide that the immigration judge "may grant a motion for continuance for good cause shown," but do not define "good cause." 8 C.F.R. § 3.27 (1988). We have held, in the context of immigration proceedings, that "the decision to grant or deny continuances is in the sound discretion of the trial judge...." *Rios-Berrios,* 776 F.2d at 862. But we have also observed that the judge's discretion is limited. In particular, we have cautioned that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay" can render the alien's statutory rights merely "an empty formality." *Id.* (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)). We reverse when we conclude that the judge's actions constitute "an abuse of discretion." *Id.*

The question whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case. *Id.* For example, we have remanded a number of cases in which the immigration judge's denial of a continuance, or failure to inquire whether a continuance was needed, resulted in a denial of the alien's right to counsel. *See Reyes-Palacios v. INS,* 836 F.2d 1154, 1155–56 (9th Cir.1988); *Colindres-Aguilar,* 819 F.2d at 261; *Rios-Berrios,* 776 F.2d at 863; *Castro-Nuno,* 577 F.2d at 579.[4]

---

1. The statutory and regulatory provisions applicable to deportation proceedings govern hearings on applications for asylum and withholding of deportation. *Rios-Berrios,* 776 F.2d at 862.

2. We have consistently emphasized the critical role of counsel in deportation proceedings. *See Reyes-Palacios v. INS,* 836 F.2d 1154, 1155 (9th Cir.1988); *Escobar Ruiz v. INS,* 813 F.2d 283, 292–93 (9th Cir.1987), *aff'd,* 838 F.2d 1020 (9th Cir.1988) (en banc). We have characterized the alien's right to counsel of choice as "fundamental" and have warned the INS not to treat it casually. *Rios-Berrios,* 776 F.2d at 863–64. As we have also said, that right must be respected in substance as well as in name. *Id.* at 863.

3. It is unclear, however, whether prejudice must be shown where the statutory right to counsel has been effectively denied. *See Cerda-Pena,* 799 F.2d at 1377 n. 3; *Rios-Berrios,* 776 F.2d at 863.

4. We have also denied petitions for review despite the immigration judge's failure to grant a continuance, where the alien had already had an extended period of time in which to obtain counsel and did not do so. *See Vides-Vides v. INS,* 783 F.2d 1463, 1470 (9th Cir.1986) (where alien failed to obtain counsel after four months and two continuances, immigration judge justified in proceeding with hearing); *Avila-Murrieta v. INS,* 762 F.2d 733, 736 (9th Cir.1985) (in light of fact that alien had four years in which to prepare case, immigration judge did not abuse his discretion in refusing to grant requested continuance). We have noted that in deportation proceedings, aliens are required to employ counsel at their own expense and that after a reasonable period of time has been afforded, the hearing officer may properly conclude that the alien has been unable to do so. *Vides-Vides,* 783 F.2d at 1470.

With regard to change of venue, the regulations provide that the immigration judge, "for good cause, may change venue on motion by one of the parties." 8 C.F.R. § 3.19(b) (1988). Again, "good cause" is not defined; again, denials of such motions must be evaluated on a case by case basis. Again, the decision is committed to the immigration judge's sound discretion and will not be overturned except for an abuse of that discretion. Although we have not addressed many petitions for review in which change of venue was at issue, we have granted at least one petition on facts quite similar to those involved here. In *Castro-O'Ryan*, the petitioner was being detained in Florence and his immigration proceedings were held before Judge Nail. Castro-O'Ryan claimed that he had sent Judge Nail a telegram requesting a change of venue to San Francisco because he had two material witnesses in the San Francisco area and his counsel of choice was also located there. 847 F.2d at 1311. Judge Nail denied receiving the telegram and said that, even if he had received it, he might not have granted the request. *Id.* We remanded the case, declaring, "Castro asked for the opportunity to have counsel of his choice in San Francisco. Judge Nail never ruled on that request but effectively denied it. . . . The opportunity to obtain counsel was prevented." *Id.* at 1313.

■ Under the circumstances of this case, Judge Nail's denial of Portillo Baires' request for a continuance and change of venue constituted an abuse of his discretion and denied Portillo Baires his statutory right to present evidence in his own behalf.[5] At the time of Portillo Baires' scheduled hearing on April 15, his attorney, Harkness, was in San Francisco. Portillo Baires had had only a few days in which to communicate with Harkness between the time he retained Harkness and the time he left San Francisco to return to Florence for the hearing. Contrary to Judge Nail's implication, Portillo Baires and Harkness did not deliberately wait until the last minute to make their request. Rather, the delay

was due to the fact that Portillo Baires had only recently bonded out of custody in Florence and traveled to San Francisco, where it took him a certain amount of time to find an attorney willing to represent him on a pro bono basis.

Moreover, Harkness was not idle during the brief period between the date he was retained, pro bono, and the date of the hearing. He arranged for the testimony of an expert witness who resided in the San Francisco area and located two other potential witnesses. The necessary arrangements for the testimony of these potential witnesses could not be completed by April 15, nor was the expert able to travel to Florence. While Judge Nail did express his willingness to accept testimony in written form, he ignored Harkness' assertion that written testimony could not be prepared in time for the hearing and issued his decision in the course of the day's proceedings. Judge Nail never asserted that the witnesses' testimony as described by Myers was immaterial, unimportant, or cumulative, or that it would not contribute to a fair resolution of Portillo Baires' asylum claim. Rather, his only stated ground for denying the request was an inability to fill his calendar on only five days' notice, and a brief observation that he found the arguments for change of venue "not persuasive."

The convenience of the immigration court is certainly a factor to be weighed when considering a request for a continuance or change of venue. However, the immigration judge must also consider other factors. *Cf. United States v. Flynt*, 756 F.2d 1352, 1358–59 (listing factors appellate court considers when reviewing district court's denial of request for continuance), *amended*, 764 F.2d 675 (9th Cir.1985). In deciding whether denial of the alien's request would violate his statutory right to a reasonable opportunity to present evidence in his own behalf, the judge must consider the nature of the evidence to be presented and its importance to the alien's claim. In this case, Portillo Baires' need to present important testimony from other witnesses

---

**5.** We need not decide whether Portillo Baires' rights would have been violated had Judge Nail granted part of the request and afforded him either a continuance or change of venue.

clearly outweighed the considerations relating to Judge Nail's calendar.

Other factors are relevant as well, such as whether the need for the continuance or change of venue is due to unreasonable conduct on the part of the alien. Here, Portillo Baires had not delayed unreasonably in attempting to obtain counsel and his counsel had not delayed unreasonably in making efforts to obtain witnesses. In this connection, we believe that Portillo Baires acted reasonably in deciding to leave Florence and journey to San Francisco after being bonded out of custody and that his selection of San Francisco-based counsel and witnesses was also reasonable. Another consideration is the number of prior continuances granted the alien and their duration. Portillo Baires had previously been granted only one continuance of less than two months' duration. *Compare Vides-Vides v. INS*, 783 F.2d 1463, 1470 (9th Cir.1986) (denial of continuance upheld where alien had already been granted two continuances of four months' duration). When the additional factors are weighed in the balance, Portillo Baires' claim for relief is, if anything, even stronger.

In short, because of the immigration judge's inflexibility, Portillo Baires' attorney was deprived of a fair opportunity to prepare his case and Portillo Baires was left without any evidence to present at the hearing, other than his own testimony. Under these circumstances, we hold that Judge Nail's denial of the request for a continuance and change of venue denied Portillo Baires his statutory right to present evidence and constituted an abuse of the judge's discretion.[6]

We also think it clear that Portillo Baires was prejudiced by his inability to present testimony from other witnesses. The expert witness Harkness had located was prepared to testify as to the persecution of students and young people in El Salvador, while the two potential witnesses contacted by Harkness were personally familiar with the circumstances of Portillo Baires' alleged persecution and could have corroborated his testimony. Because Judge Nail found there was no evidence that Portillo Baires had been persecuted and no "credible evidence" that he would be in danger of persecution should he return to El Salvador, the testimony of these witnesses could have materially affected the outcome of his case. *See Cerda-Pena*, 799 F.2d at 1379 (prejudice exists where alien's rights violated "in a manner so as potentially to affect the outcome of the proceedings").

## CONCLUSION

We have already made clear that aliens' statutory rights in deportation proceedings must be respected and that the desire for expeditious handling of immigration cases cannot, in itself, justify the evisceration of those rights. *See Rios-Berrios*, 776 F.2d at 862–63. Under the circumstances of this case, we hold that the immigration judge's denial of Portillo Baires' request for a continuance and change of venue denied him procedural rights guaranteed by statute and regulation, and prejudiced the outcome of his case. We therefore grant Portillo Baires' petition for review, reverse the order of the INS that he voluntarily depart or be deported from this country, and remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

**6.** In view of our holding, we need not decide whether Judge Nail's refusal to transfer the case to San Francisco, in itself or combined with his denial of the requested continuance, also deprived Portillo Baires of his right to be represented by his counsel of choice. We also leave to another time the question whether the holding of deportation proceedings in Florence in itself violates the rights of aliens to such counsel. However, we note that it is difficult and expensive for aliens and their attorneys to travel to Florence; we also note that at least one district court has found there is "little or no legal representation available to indigent detainees" in Florence. *Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1500 ¶ 87 (C.D.Cal.1988). Finally, we note that, according to Harkness, Myers is the only private practitioner in Florence and as of the time of this administrative hearing, he was attempting to handle over 400 cases.