67 F.3d 305
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jerry Dalere AGTANG, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70350.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 12, 1995.*
Decided Oct. 3, 1995.
 
 1
 Before: BROWNING, PREGERSON, Circuit Judges, and TANNER,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Jerry D. Agtang, a citizen of the Philippines, petitions for review of a decision by the Board of Immigration Appeals affirming an immigration judge's denial of his motion to reopen deportation proceedings under 8 U.S.C. Sec. 1252b(c)(3). The IJ had conducted an in absentia deportation hearing and ordered Agtang deported. We have jurisdiction under 8 U.S.C. Sec. 1105(a). We reverse and remand.
 
 FACTS AND PRIOR PROCEEDINGS
 
 4
 Jerry D. Agtang was born in the Philippines. He entered the United States on March 11, 1988, as a conditional permanent resident because of his marriage to a United States citizen. The marriage ended in divorce on July 19, 1991. The Immigration and Naturalization Service ("INS") terminated Agtang's conditional status when he failed to appear for an interview. A lawyer allegedly advised Agtang not to appear.
 
 
 5
 On July 5, 1991, the INS issued an Order to Show Cause, charging Agtang with deportability based on the termination of his conditional resident status. On March 27, 1992, after several continuances, the Immigration Judge ("IJ") held a hearing on Agtang's deportability. He then continued the hearing to allow Agtang to submit an asylum application, which Agtang did on April 9, 1992. After rescheduling the hearing twice, the IJ set a hearing date of June 8, 1992.
 
 
 6
 At the June 8, 1992 hearing, Agtang renewed his request to remove his conditional legal permanent resident status. He had already submitted the appropriate form for that purpose, an I-751, but neither he nor the government had an extra copy for the IJ. Thus, the IJ set a June 12, 1992 hearing date at which only counsel were to appear "for the filing of the Form I-751 by the Government.... [R]espondent's counsel, to submit their additional documents they wish me to consider...." [E.R. 89]. Agtang's counsel had previously informed the judge that he would be attending an unrelated legal conference from June 10 to June 15, but he did not object to the June 12 filing date when the IJ set it. The IJ explained that Agtang did not need to appear on June 12. Also at the June 8 hearing, the IJ set the date for the hearing on the merits of the asylum and I-751 waiver for February 8, 1993, eight months later. The IJ, through a translator, emphasized to Agtang that he did have to appear for that hearing.
 
 
 7
 Counsel for Agtang did not attend the June 12, 1992 submission hearing (presumably because he was attending a conference). The IJ set another hearing for June 26, 1992, "to find out what's going on" and had notices sent both to counsel and to Agtang asking them to appear. [E.R. 97]. Due to a computer malfunction, those notices informed counsel and Agtang to appear in Cincinnati. Thus, at the June 26 hearing, the IJ reset the hearing date for August 4, 1992, and sent proper notices to both Agtang and counsel asking them to appear.
 
 
 8
 Agtang's lawyer appeared at the August 4, 1992 hearing, but Agtang did not. Counsel for Agtang stated that he had contacted Agtang by phone to inform him of the hearing. Counsel suggested that Agtang's wife's pregnancy or perhaps a miscommunication because of Agtang's limited English prevented his appearance. The IJ denied counsel's motion for a continuance and ordered Agtang to be deported.
 
 
 9
 Agtang appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA construed the appeal as a motion to the IJ to reopen. Under new regulations, a motion to reopen has become the appropriate method of contesting an in absentia deportation order. The IJ denied the motion to reopen. Agtang appealed the IJ's order to the BIA. The BIA affirmed the IJ's decision. Agtang now appeals the BIA decision.
 
 ANALYSIS
 
 10
 Agtang challenges the denial of his motion to reopen and contends that his in absentia deportation violated due process; he also argues he was entitled to a continuance of the deportation proceedings. Because we reverse on the continuance issue, we do not reach Agtang's remaining claims.
 
 
 11
 At the hearing on August 4, 1992, Agtang's counsel asked for a continuance when Agtang failed to appear for the hearing. [E.R. 110]. The IJ denied the motion. We may reverse if we find that the IJ abused its discretion by denying the continuance. Baires v. INS, 856 F.2d 89, 91 (9th Cir.1988).
 
 
 12
 An IJ may grant a continuance if there is "good cause." 8 C.F.R. Sec. 3.25. While we have held that the IJ has discretion to grant or deny continuances, we have also cautioned that " 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay' can render the alien's statutory rights merely 'an empty formality.' " Baires, 856 F.2d at 91 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)); see also Rios-Berrios v. INS, 776 F.2d 859, 862 (9th Cir.1985).
 
 
 13
 The inquiry whether the denial of a continuance amounts to an abuse of discretion "must be resolved on a case by case basis according to the facts and circumstances of each case." Baires, 856 F.2d at 91. We think the IJ should have granted a continuance in this case because there was "good cause." Factors beyond Agtang's control, and known to the IJ, conspired to produce a confusing state of affairs: the IJ had told Agtang he needed to appear again only in February (not earlier), there is no evidence in the record to suggest that Agtang knew his lawyer missed a hearing date (thus prompting the IJ to reschedule the hearing), the first notice Agtang received of the hearing told him to appear in Cincinnati, and finally, the second notice Agtang received and the phone call about the hearing were both in English, a language that Agtang does not understand well.[1] The IJ should have recognized this confusing situation for what it was and granted the continuance. There is no indication that Agtang was shirking his responsibilities: he had appeared before the IJ six times before.
 
 
 14
 Moreover, Agtang was prejudiced by not having a hearing. See Avila-Murrieta, 762 F.2d 733, 736 (9th Cir.1985). He did not have the opportunity to present evidence in support of his renewed application to remove his conditional legal permanent resident status or any additional evidence regarding his asylum application. See E.R. 91; Rios-Berrios, 776 F.2d at 862-63. We find that the IJ abused its discretion by not granting the continuance.
 
 CONCLUSION
 
 15
 We reverse and remand for further proceedings consistent with the views herein expressed.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 A translator was always present in the hearings to advise Agtang of his next required appearance. The only notice Agtang received of the August 4 hearing was in English