# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

QI CUI,

                      *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

                      *Respondent.*

No. 05-72185

Agency No.
A75-726-338

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 8, 2008—Pasadena, California

Filed August 19, 2008

Before: Harry Pregerson, Glenn L. Archer, Jr.,* and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Pregerson

---

*The Honorable Glenn L. Archer, Jr., Senior United States Circuit
Judge for the Federal Circuit, sitting by designation.

11043

**COUNSEL**

William Kiang, Law Offices of Kiang & Kiang, San Gabriel, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Civil Division; Richard M. Evans, Assistant Director; Allen W. Hausman, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, Washington, DC, for the respondent.

## OPINION

PREGERSON, Circuit Judge:

Qi Cui ("Cui"), a native and citizen of China, petitions for review of a final order by the Board of Immigration Appeals ("BIA") affirming Immigration Judge ("IJ") Thomas Y.K. Fong's ruling that pretermitted Cui's application for withholding of removal and relief under the Convention Against Torture ("CAT"). We must decide whether the IJ abused his discretion in refusing to grant Cui's motion for a continuance so that she could resubmit fingerprints for a background security check. We have jurisdiction under 8 U.S.C. § 1252, and we grant relief and remand.

## STANDARD OF REVIEW

We review an IJ's decision to deny a request for continuance for abuse of discretion. *See Nakamoto v. Ashcroft*, 363 F.3d 874, 883 n.6 (9th Cir. 2004); *see also Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988). We review questions of law de novo. *Baballah v. Ashcroft*, 367 F.3d 1067, 1073 (9th Cir. 2004). We review factual findings for substantial evidence. *Abebe v. Gonzales*, 432 F.3d 1037, 1039 (9th Cir. 2005).

## FACTUAL AND PROCEDURAL BACKGROUND

Qi Cui is a thirty-eight-year-old native and citizen of China. She was admitted to the United States on April 15, 1996 as a non-immigrant business visitor. Cui testified that she was sent to the United States by Glory International to develop its

business as its financial manager. Cui began studying at Rose-mead College and changed to non-immigrant student status. She testified that she later attended Pasadena City College to study nursing. The Department of Homeland Security ("DHS") (formerly INS) authorized Cui to remain in the United States until December 19, 1998. She remained in the United States beyond that date without authorization from DHS.

On October 2, 2000, Cui applied for asylum. She claimed that she suffered a coerced abortion in China as a result of the national one-child policy. To support her asylum application, she submitted her fingerprints for analysis. There is no evidence that the fingerprint analysis revealed any criminal record or other problems with Cui's eligibility for asylum. Her case was then referred to the immigration court.

Removal proceedings were commenced against Cui on December 12, 2000, with the filing of a Notice to Appear that alleged that Cui had remained in the United States beyond December 19, 1998 without authorization.

On January 23, 2001, Cui and her counsel appeared for the master calendar hearing. But, at the government's request, the IJ rescheduled the hearing for March 8, 2001 because the government requested a continuance to consider dismissing the charges against Cui. On March 8, 2001, the IJ granted another continuance because, "just prior to going on the record," the government had decided to amend the charges against Cui.

On April 3, 2001, Cui and her counsel appeared and responded to the amended allegations. The IJ again rescheduled the hearing on removability "to give both sides an opportunity to review the materials and documents offered in this case." Because Cui's counsel had a "busy calendar" on June 4, 2001, the IJ reset the hearing for August 6, 2002.

On August 6, 2002, Cui contested her removability. She explained that she had been unable to complete the require-

ments for her program before her student stay expired. She further explained that her college had failed to submit a Form I-538, requesting that her student immigrant status be extended to enable her to complete her nursing program. When the IJ expressed interest in the testimony of a certain witness, Cui's counsel asked for a short continuance so that the witness could be subpoenaed. The IJ granted the request. The matter was reset for August 19 and then rescheduled for September 18 because the witness was unavailable on the August 19 date.

On September 18, 2002, following the hearing on the removability issue, Cui's counsel conceded that Cui was removable. Cui withdrew her application for asylum but indicated she would still pursue withholding of removal and CAT relief. The IJ asked, "when was the last time [Cui] did it [i.e., submitted her fingerprints]?" Cui's counsel explained that Cui had completed the required fingerprinting but that the fingerprints were submitted "more than one year ago." The IJ then told Cui's counsel that "it would have to be done . . . a minimum of 60 days before the hearing, not more than 120 days." The IJ did not confirm that Cui, who had requested a Mandarin interpreter, understood those directions. Nor did the IJ inform Cui of the consequences of failing to submit a new set of fingerprints in advance of the merits hearing.

On February 5, 2003, both Cui and her counsel appeared for the merits hearing, but a priority case took precedence. The IJ explained, "the court has simply run out of time." The IJ rescheduled the merits hearing for June 20, 2003 — his "first available date." The IJ did not inquire about the status of Cui's fingerprints, nor did he warn Cui of the consequences of failing to resubmit fingerprints before the rescheduled merits hearing.

On June 20, 2003, Cui's counsel advised the IJ that Cui had not yet resubmitted her fingerprints. Cui's counsel explained, "Your Honor, I have no good excuse for [failing to submit

updated fingerprints]. I, I believe we just overlooked it. We forgot about it. I'm sorry." Cui's counsel requested a short continuance to update the fingerprints before the IJ held a merits hearing. Alternatively, Cui's counsel requested that the IJ proceed with the merits hearing as planned and grant a continuance for Cui to resubmit fingerprints if relief otherwise was warranted.

The IJ denied Cui's motion for a continuance to enable her to resubmit fingerprints: "[T]his case has been going on for a period of time . . . . I don't see good cause again for . . . proceeding when the record is quite clear that I gave you and your client opportunity to present the claim . . . ." Because of this ruling, the IJ pretermitted, i.e., cut short, Cui's applications for relief without hearing any testimony or considering any evidence. The evidence included a medical record that corroborated Cui's claim that she suffered a forced abortion while in China.

Cui appealed to the BIA. The BIA affirmed the IJ's pretermission of Cui's applications for relief, finding that Cui failed to show good cause for her failure to update her fingerprints prior to the latest rescheduled merits hearing. The BIA also denied Cui's motion to reopen and reconsider its previous decision.

## DISCUSSION

For almost all types of relief from removal, a fingerprint check is required to establish that the applicant has not been convicted of particular classes of crimes, and that she is not otherwise inadmissible or ineligible. The results of a fingerprint check expire fifteen months after the date they are issued by DHS. DHS may require that the applicant resubmit her fingerprints so that DHS can update the security checks. 70 Fed. Reg. 4743, 4744 (Jan. 31, 2005). Because Cui submitted her fingerprints more than two years before her rescheduled mer-

its hearing, Cui was required to resubmit her fingerprints for an updated security check before she could be granted relief.

We must decide whether the IJ abused his discretion in denying Cui's motion for a continuance so that she could resubmit her fingerprints. We hold that, in the circumstances of this case, the IJ's denial of Cui's request for a continuance constituted an abuse of discretion. Accordingly, we grant Cui's petition and remand for the IJ to grant Cui the opportunity to submit new fingerprints in advance of her merits hearing.

**[1]** Under 8 C.F.R. § 1003.29, an IJ "may grant a motion for continuance for good cause shown." In the context of immigration proceedings, the decision to grant or deny continuances is in the sound discretion of the trial judge. *See Nakamoto*, 363 F.3d at 883 n.6 (9th Cir. 2004); *see also Baires*, 856 F.2d at 91. But the IJ's discretion is limited. In particular, we have cautioned that 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay' can render the immigrant's statutory rights merely 'an empty formality.' " *Baires*, 856 F.2d at 91 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). "The question whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis." *Id.*

**[2]** When evaluating an IJ's denial of a motion for continuance we consider a number of factors — including, for example, (1) the importance of the evidence, (2) the unreasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted. *See Bairnes,* 856 F.2d at 92-93; *cf. United States v. Flynt*, 756 F.2d 1352, 1358-59 (listing factors appellate court considers when reviewing district court's denial of request for continuance), *amended*, 764 F.2d 675 (9th Cir. 1985).

**[3]** We start by considering the evidence that was excluded as a result of the IJ's denial of Cui's motion for a continuance. In this case, Cui's ability to submit new fingerprints for analysis was vital to the success of her petitions. Without an updated security check, Cui could not be granted relief. Thus, when the IJ denied her request for a continuance to resubmit her fingerprints, he effectively pretermitted any hope Cui had of obtaining relief. Her case was over. The vital importance of the excluded fingerprint evidence counsels in favor of granting a continuance.

We also consider whether the need for a continuance resulted from the immigrant's unreasonable conduct. *See Bairnes,* 856 F.2d at 92-93*; see also* 8 C.F.R. § 1208.10 (requiring the applicant to show "good cause"). Here, Cui admitted that she failed to comply with the fingerprint requirement. We conclude, however, that Cui's failure to comply with the fingerprint requirement was not unreasonable, as discussed below, because there were legal uncertainties regarding the fingerprint requirement and because Cui did not receive adequate notice of the requirement.

**[4]** At the time of Cui's case, in June 2003, the law governing the fingerprint requirement was unclear and uncertain.[1] In January 2005, the Executive Office for Immigration Review ("EOIR") announced proposed changes to the existing regulations in order to clarify certain areas of the law that governed fingerprinting of immigrants. The EOIR acknowledged that 8 C.F.R. § 1003.29 — which provides that "[t]he Immigration Judge may grant a motion for continuance for good cause shown" — "leaves numerous questions unanswered in the complicated area of criminal history checks and national security investigations." 70 Fed. Reg. at 4744. The EOIR admitted, "[t]he current regulations are also unclear as to the

---

[1]There were no published Ninth Circuit decisions holding that pretermission of an immigrant's applications is appropriate where there is a failure to comply with the fingerprint requirement.

scope of an immigration judge's authority to act to grant relief in situations where a background investigation is ongoing." *Id.* In practice, IJs did not always require that fingerprint checks be completed in advance of the merits hearing. In fact, sometimes relief was granted before the fingerprint checks were completed. *See* 70 Fed. Reg. at 4744; *see, e.g.*, *Santillan v. Ashcroft*, No. 04-2686, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) (certifying a nationwide class of immigrants who sought relief for lengthy delays in security checks occurring *after* the immigrants had been granted permanent resident status); *In re Hung Phuoc Nguyen*, No. A44 233 829, 2005 WL 3802171 (BIA 2005) (upholding IJ's grant of withholding of removal and remanding because "the record does not reveal that the required background and security checks were completed during the proceedings"); *In re Xiu Zhen Sun*, No. A95 176 365 (BIA 2005) (granting withholding of removal relief without reservation while granting asylum relief "dependent upon the required security checks").

[5] Moreover, the record indicates that Cui did not receive adequate notice from the IJ regarding the fingerprint requirement. In its decision, the BIA presumed that Cui had notice of the requirement based solely upon the IJ's statement, on September 18, 2002, that fingerprints "would have to be done . . . a minimum of 60 days before the hearing, not more than 120 days." However, the IJ did not direct this instruction to Cui, who spoke only Mandarin, but rather spoke to her counsel. The BIA's finding that "the respondent indicated that she understood these instructions" has no support in the record at all. In fact, the record demonstrates that Cui did not speak during the exchange, unlike at the end of the hearing when, denying her claim, the IJ directly addressed Cui on her right to appeal and obligation to report for removal and deportation.

[6] The IJ's terse instruction to Cui's counsel certainly would not meet the notice standards under existing law. Since Cui's case, the EOIR amended its regulations to heighten the notice requirements. *See* 8 C.F.R. § 1003.47 (effective April

1, 2005). Under the new requirements, several steps must be followed to ensure that applicants understand the fingerprint requirement. Upon the applicant's filing of an application for relief,

> DHS shall notify the [applicant] of the need to provide biometrics and other biographical information and shall provide a biometrics notice and instructions to the [applicant] for such procedures. The immigration judge shall specify for the record when the [applicant] receives the biometrics notice and instructions and the consequences for failing to comply with the [biometrics] requirements.

8 C.F.R. § 1003.47(d). As the EOIR explained, the new rule "requires immigration judges to cooperate with DHS in . . . [i]nstructing aliens on how to comply with biometric processing requirements for law enforcement checks." 70 Fed. Reg. at 4744.

Cui received no such guidance. There is no evidence that DHS delivered a fingerprint notice and instructions to Cui, as is currently required under 8 C.F.R. § 1003.47. The IJ did not state on the record that Cui received instructions from DHS on how to update her fingerprints, nor did the IJ provide such instructions to Cui. *See* 8 C.F.R. § 1003.47(d) (requiring the IJ to specify for the record when the applicant receives the fingerprint notice from DHS). The IJ did not warn Cui that failure to resubmit new fingerprints in advance of the merits hearing could result in the pretermission of her claims. *See id.* (requiring the IJ to specify for the record the consequences for failing to submit the required fingerprints).

The government claims that Cui was told of the requirement on May 14, 2001. This is misleading. The record indicates that the IJ informed the *government attorney* that he expected the *government* to complete its security check of the fingerprints (which had already been submitted by Cui) in

advance of the merits hearing, or, if completion was not possible, to be prepared to proceed without knowing the results of the security check. The IJ said, "you need to do INS record checks at least three [to] four months before the hearing. The appropriate checks must be done by the Government pursuant to the Court's instructions. If they fail to do that, I will certainly consider their grounds but, counsel, I do, do expect the Government to proceed."

The government also refers to the I-589 Form Instructions as evidence that Cui should have known to resubmit her fingerprints in advance of the merits hearing. The Instructions state, "failure . . . to provide your updated biometrics . . . without good cause may constitute an abandonment of your *asylum* application and result in the denial of employment authorization." Form I-589, Application for Asylum and Withholding of Removal, Instructions, 7 (emphasis added). However, Cui was not applying for asylum. Instead, she was seeking withholding of removal and CAT relief. The I-589 Form Instructions give no warning that withholding of removal or CAT relief may be deemed abandoned because of failure to produce updated fingerprints.

The BIA did not rely on either the IJ's May 14 statement or the I-589 Form as evidence of notice, and neither do we.

Given the circumstances, Cui's failure to submit updated fingerprints in advance of the merits hearing was not unreasonable. For these reasons, we find Cui's degree of diligence on the matter to have been sufficient.

[7] Another factor we consider in deciding whether the IJ abused his discretion is any inconvenience caused to the immigration court by the requested continuance. *Baires*, 856 F.2d at 92-93. Here, the record demonstrates that granting Cui's request would not have resulted in any cognizable inconvenience to the court or the government. The morning of June 20, 2003 had already been reserved for Cui's merits

hearing, so allowing Cui to present testimony on her claims during that time period would not have required the IJ to devote any additional time to Cui's case. If, after hearing the merits, the IJ decided that Cui was qualified for relief, the IJ could have simply issued a tentative grant of relief conditioned on the submission and analysis of her fingerprints and then scheduled a brief hearing to hear the security check results. If, instead, the IJ had decided that Cui did not qualify for relief after hearing the merits of her claims, he could have denied relief immediately. Allowing Cui to present her case would not have significantly burdened the IJ or the government. Thus, this factor also weighs in Cui's favor.

[8] We also evaluate the denial of the motion for a continuance in light of the length and number of continuances that have previously been granted in the case. *Baires*, 856 F.2d at 93. The proceedings in this case had been ongoing for about two years. When deciding to deny Cui's motion for a continuance, the IJ inaccurately faulted Cui for the previous delays in her case.[2] Our review of the procedural history, discussed above, demonstrates that Cui requested few continuances before her counsel's June 20, 2003 request. Instead, the delays were a result of the government's requests and the IJ's busy calendar. It would be unfair to punish Cui for the government's lack of preparation and the crowded docket of the immigration courts. As frustrating as delays may be, an immigrant's right to have her case heard should not be sacrificed because of the IJ's heavy caseload.

---

[2]In his oral decision, the IJ mischaracterized the record. He stated, "[a]t the conclusion of the presentation of the case on the issues of removability, the respondent's counsel then requested another continuance." This statement is not supported by the record. In fact, it was the government, not Cui's counsel, that was unprepared to proceed on September 18, 2002 at the conclusion of the removability hearing. When the IJ asked the government if it was ready for the merits hearing, the government attorney admitted, "no, I haven't even looked at the substantive claim to be honest." Cui's counsel told the IJ, "I'm ready," and did not request a continuance. The merits hearing was rescheduled for February 5, 2003 so the *government* could prepare its case.

## CONCLUSION

**[9]** Because of the IJ's arbitrary invocation of an ambiguous rule as to which Cui had no notice, Cui was deprived entirely of an opportunity to present her case. As a result of the IJ's decision to deny the continuance, Cui's claims for withholding of removal and CAT relief were pretermitted before she could present any evidence to support them. The factors we consider — the importance of the evidence excluded, the reasonableness of the immigrant's conduct, the inconveniance to the immigration court, and the prior continuances — strongly militate in favor of Cui. After considering the extent of the harm that would befall Cui, along with these factors, we are required to conclude that the denial of a continuance was arbitrary and unreasonable. Although there are no bright-line rules for deciding when an IJ's denial of a continuance warrants reversal, it is clearly an abuse of discretion for an IJ to deny a request from an otherwise diligent applicant for a short continuance to submit fingerprints, particularly where the applicant was faced with an unclear fingerprint requirement and where the applicant was disserved by an IJ's inadequate guidance on the requirement. Therefore, we conclude that the IJ abused its discretion in denying the continuance and we grant relief and remand for further proceedings consistent with this opinion.

**GRANTED and REMANDED.**