Manuel TINIZARAY–NARVAEZ,
Petitioner,

v.

ATTORNEY GENERAL OF
the UNITED STATES.

No. 08–3333.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Sept. 24, 2009.

Opinion filed: Nov. 24, 2009.

John D. Perez, Esq., Perez, Perez &
Perez, Newark, NJ, for Petitioner.

Christina B. Parascandola, Esq., United
States Department of Justice, Office of
Immigration Litigation, Washington, DC,
for Respondent.

Before: McKEE, NYGAARD and
ROTH, Circuit Judges.

OPINION

PER CURIAM.

Petitioner Manuel Tinizaray–Narvaez, a
native and citizen of Ecuador, entered the
United States in November 1994. He was
served with a Notice To Appear for remov-
al proceedings on May 31, 2005, alleging
that he entered without being admitted or
paroled and thus is removable under Im-
migration & Nationality Act ("INA")
§ 212(a)(6)(A)(i), 8 U.S.C.
§ 1182(a)(6)(A)(i). The allegations were
conceded, and Tinizaray applied for cancel-
lation of removal, INA § 240A(b)(1), 8
U.S.C. § 1229b(b)(1), and voluntary depar-
ture, contending that his removal would
cause an exceptional and extremely unusu-
al hardship to his United States citizen
daughter, Leslie.[1] Leslie was born on

---

1. Cancellation of removal is available to an
alien who has been physically present in the
United States for at least 10 years, has been a
person of good moral character, has not been
convicted of a specified criminal offense, and
has established that removal would result in
exceptional and extremely unusual hardship
to the alien's spouse, parent, or child, who is

January 17, 2000, in Newark, New Jersey to Tinizaray and Beatrice Gonzalez. She was five years old at the time of removal proceedings. The couple live together but are not married, and Ms. Gonzalez has two other children who also live with the couple. Like Tinizaray, Ms. Gonzalez does not have lawful status.

On November 29, 2005, the Immigration Judge scheduled a merits hearing for June 26, 2006. The IJ set a deadline of May 12, 2006 to submit information specific to the cancellation of removal application, and also issued a written "control order," which, with respect to expert testimony, stated the following: "Agreement to telephonic testimony of expert witnesses is encouraged and typically results where opposing counsel is provided with a statement of the expert and a CV." A.R. 230. On the record, the IJ stated:

> All right. So, then May 12, 2006 is your deadline. I, I just don't want any evidence of any length or any voluminous evidence handed up at the merits hearing because I'd like to have read over this case in advance. And also, this will also make sure that, that you take care of talking to the trial attorney about expert testimony that you might need to present. It, I don't know if you're going to do that, but if it's going to, to be a situation where you want the expert to testify telephonically, then I would expect you to coordinate that with opposing counsel.

A.R. 67–68.

On May 12, 2006, counsel for Tinizaray submitted a written request to enlarge the time to file supporting evidence, stating that his expert neuropsychologist would be able to evaluate Leslie on May 30, 2006, and would be able to deliver a comprehensive report by June 6, 2006. The IJ denied the motion on the ground that Tiniza-

ray had yet to submit *any* documentary evidence with his cancellation of removal application, good cause was not shown to await more evidence, and the delay was caused by Tinizaray. Notwithstanding that his motion for an extension was denied, on June 19, 2006, counsel submitted 60 pages of documents in support of the cancellation of removal application, including most importantly, a four-page, detailed, expert report by a licensed clinical psychologist, Stacey R. Tuchin, Psy.D. The submission also included Dr. Tuchin's curriculum vitae. Dr. Tuchin had evaluated Leslie on May 30, 2006, as promised. In addition, as part of her evaluation, Dr. Tuchin had interviewed Leslie's kindergarten teacher over the telephone prior to writing her report.

Dr. Tuchin described Leslie as "an at-risk youngster emotionally and academically," A.R. 158, explaining that:

> Her symptoms of anxiety meet full diagnostic criteria for Separation Anxiety Disorder (Diagnostic Code: 309.21), in accordance with the Diagnostic and Statistical Manual of Mental Disorders. If her affective reactions are prolonged and untreated, Leslie is at risk for the development of more chronic psychological disturbances and interpersonal difficulties relating to trust, separation, and rejection. Mr. Tinizaray experiences great concern about the possibility of removal from the United States ... because his daughter has formed a powerful attachment to him as a prophylaxis against familial adversity. Mr. Tinizaray described significant emotional abuse on the part of Leslie's mother (e.g. episodes of affective dysregulation and considerable anger management difficulties). It has only been through his intervention that the abuse has not become physical. He fears for his daugh-

a United States citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1)(A)–(D).

ter's safety should she be forced to remain in the United States with her mother, a parental figure prone to behavioral difficulties.

*Id.*

Dr. Tuchin went on to summarize Leslie's academic difficulties by noting that she had expressive language difficulties, problems learning basic math concepts, socialization difficulties, attention problems and shyness. Her kindergarten teacher had suggested that Leslie would benefit from a formal program called Basic Skill Instruction, and other evaluative and remedial interventions available in the school district to improve Leslie's level of scholastic and neurocognitive functioning. *Id.*

> Last, Dr. Tuchin stated her conclusion: It is clear to this examiner that the removal of Mr. Manuel Tinizaray would pose an extreme and unusual hardship to Leslie Tinizaray. Compared to other United States Citizen children similarly situated, the result of deportation on the life of this youngster appears appreciably worse given her diffuse vulnerabilities and the affective distress deportation would inevitably cause. This is an especially compelling situation given that several spheres of functioning would be irrevocably impacted, including psychological, academic, developmental, familial, and interpersonal realms.

*Id.*

At the merits hearing on June 26, 2006, counsel for the Department of Homeland Security objected to all of the documents submitted because they were untimely, and objected specifically to Dr. Tuchin's evaluation because she was not available for cross-examination. In response to the government's objections, Tinizaray's counsel explained that it had been impossible to get an appointment with Dr. Tuchin before the deadline, and that he had in his possession all of the other evidence but had not submitted it because the expert report was the most important part of his case; he thought the better approach would be to ask for an extension of time to file everything at once. The IJ overruled the government's untimeliness objection to all of the documents except Dr. Tuchin's report. With respect to that report, the IJ inquired as to whether Dr. Tuchin was immediately available for cross-examination. Counsel responded that she was currently attending a conference and so he had not asked here if she was available. Based on that response, the IJ excluded the expert report.

At the request of the IJ, the government stated for the record questions it would have propounded on cross-examination, including, but not limited to, questions concerning Leslie's diagnosis, what treatment was appropriate for her condition, and whether that treatment was available in Ecuador. At the government's suggestion, Tinizaray's counsel requested a continuance. A.R. 105–110. The IJ stated that she would not grant the continuance because she did not have "any reason to think that, that you or your client will utilize any extra time to really make progress on the case." A.R. 110. The IJ instructed Tinizaray to make his case for a continuance on the record and commented that "the one thing that you could have done and did not do is to bring to court the mother of your child. So, I'm not sure about why I should postpone the case." *Id.*

In an effort to make his case and with respect to the untimely submission of Dr. Tuchin's evaluation, Tinizaray testified that his counsel had provided him with Dr. Tuchin's name and telephone number one week after the November 29, 2005 hearing. Continuing, he stated:

> I did try to make an appointment this February, but I was told that, that the schedule was full, that I should call one

month later because it was very full. And once I called later on, I was told to call once again the next month to see if somebody would drop out because I was told that it was full from 8:00 in the morning until 8:00 at night. So, when I called the second time ... I was given [an] appointment for [May] 30th.

A.R. 114. As to Ms. Gonzalez, Tinizaray explained that she had declined to appear at the hearing because she had to pick up her sons at school, and because she feared she would be detained by immigration authorities if she appeared in immigration court.

The IJ issued an oral decision in which she denied Tinizaray's request for a continuance and his application for cancellation of removal. He was granted voluntary departure. The IJ faulted Tinizaray for failing to contact Dr. Tuchin from November 2005 until February 2006, and for failing to make any effort to have Dr. Tuchin available for cross-examination. The IJ was not convinced that Tinizaray would make an effort to secure Dr. Tuchin's testimony in the future if a continuance was granted. Without Dr. Tuchin's report, which the IJ excluded, Tinizaray's evidence on the hardship issue was insufficient.[2] His testimony revealed that Leslie is physically healthy, and not currently under any treatment, psychological or medical. Furthermore, because Ms. Gonzalez had not appeared to testify, the IJ could not question her about what her plans might be with respect to Leslie should Tinizaray be removed from the United States.

Tinizaray appealed to the Board of Immigration Appeals. He contended that the IJ erred in not granting him additional time to arrange for Dr. Tuchin to testify, and the error constituted a due process

violation. He noted that he had not previously asked for a continuance, had been present at all hearings, and had not taken any actions which were dilatory. Moreover, his cancellation of removal application had merit.

In a decision dated July 7, 2008, the Board agreed with the IJ and dismissed the appeal. The Board agreed that the evidence did not establish exceptional and extremely unusual hardship, and found no error in the IJ's decision to deny the request for a continuance, 8 C.F.R. § 1003.29. The Board concluded that Tinizaray failed to establish that the result of the proceeding would have been different with a continuance, and noted that Tinizaray had not availed himself of the opportunity to submit pertinent evidence during the pendency of his appeal in support of a motion to remand. This observation was made by the Board notwithstanding that the excluded evidence—Dr. Tuchin's report—appears in the Administrative Record as Exhibit "D" to the cancellation of removal application.

Tinizaray filed a timely petition for review in this Court and sought a stay of removal. The government filed a motion to dismiss the petition for review, contending that section 1252(a)(2)(B)(i) of the jurisdictional statute, 8 U.S.C. § 1252, removes our jurisdiction over the Board's discretionary decisions regarding the cancellation of removal/hardship determination under 8 U.S.C. § 1229b. A motions panel of this Court granted the request for a stay of removal and referred the government's motion to dismiss to a merits panel, it appearing that jurisdiction was not lacking. The parties have submitted briefs and the petition is ripe for disposition.

**2.** The IJ proceeded directly to the hardship issue, and bypassed the physical presence and good moral character issues.

We will grant the petition for review, vacate the Board's decision, reverse the IJ's order denying a continuance, vacate the IJ's order granting cancellation of removal, and remand the matter for further proceedings. As a threshold matter, we have jurisdiction to review the denial of an alien's request for a continuance. *Khan v. Att'y Gen. of U.S.*, 448 F.3d 226, 233 (3d Cir.2006) (because IJ's authority to rule on continuance motion is not specified under 8 U.S.C. §§ 1151–1378 to be in the discretion of the Attorney General, section 1252(a)(2)(B)(ii) does not deprive court of appeals of jurisdiction). Tinizaray does not contend that he meets the hardship definition without Dr. Tuchin's report. The only issue presented by the petition for review is whether the IJ erred in denying the request for additional time to arrange for Dr. Tuchin to be cross-examined.[3]

If a document is not filed within the time set by the IJ, it may be excluded, 8 C.F.R. § 1003.31(c), but an IJ may "grant a motion for continuance for good cause shown," 8 C.F.R. § 1003.29. We review an IJ's decision to deny a continuance for abuse of discretion, *see Ponce–Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir.2003), meaning that we will reverse it only if it is arbitrary, irrational or contrary to law, *see Hashmi v. Att'y Gen. of U.S.*, 531 F.3d 256, 259 (3d Cir.2008). In *Ponce–Leiva*, we held that there are no bright-line rules for resolving whether the denial of a continuance constitutes an abuse of discretion; the issue "must be resolved on a case by case basis according to the facts and circumstances of each case." 331 F.3d at 377 (quoting *Baires v. Immigration & Naturalization Serv.*, 856 F.2d 89, 91 (9th Cir.

1988)). In addition, we have noted that the lack of facial merit in the underlying application for relief may be taken into consideration in denying a continuance, *see Ponce–Leiva*, 331 F.3d at 377, and so it necessarily follows that arguable merit to the underlying application is a circumstance weighing in favor of granting a continuance.

We conclude that the IJ abused her discretion by denying Tinizaray's request for a continuance to permit the clinical psychologist the opportunity to testify in person, or telephonically, regarding the issue of hardship to Tinizaray's United States citizen daughter. The Board abused its discretion by affirming the IJ's decision and failing to remand the matter for additional proceedings and a decision on the merits of the cancellation of removal application.

In removal proceedings, an alien who applies for relief has the burden of proof to establish that he satisfies the applicable eligibility requirements, and, with respect to any form of relief that is granted in the exercise of discretion, that he merits a favorable exercise of discretion. 8 U.S.C. § 1229a(c)(4)(A). Section 240(c)(4)(B) further provides that the alien must comply with the applicable requirements to submit information or documentation in support of his application for relief as provided by law or by regulation, or in the instructions for the application. 8 U.S.C. § 1229a(c)(4)(B). An IJ may set time limits for the filing of documents. 8 C.F.R. § 1003.31(c).

Here, the May 12, 2006 deadline for submission of supporting documents was generous. Moreover, the IJ explained on the record her reasons for the deadline—

3. Tinizaray also contends that he was prejudiced by prior counsel's ineffective assistance in that documentary evidence was not timely presented in support of his cancellation of removal application. Tinizaray also raises a due process argument concerning the fairness of the proceedings. Because we have determined that the IJ's decision to deny the continuance constituted an abuse of discretion, we need not reach these arguments.

she wanted time to review the submissions prior to the hearing, and wanted counsel to work out the details of telephonic examination of any experts. The IJ faulted Tinizaray for dilatory conduct because she received the four-page expert report only a week in advance of the hearing. Under the circumstances, this was arbitrary. Although Tinizaray may have been at fault for waiting three months before calling Dr. Tuchin to schedule an appointment, he was not at fault for the delay between February and May 30, the date when Dr. Tuchin finally was able to evaluate Leslie. This delay of several months occasioned by the specialist's busy schedule is no one's fault. The IJ did not want any late-submitted evidence of any length or any voluminous evidence, which was a reasonable demand, but Dr. Tuchin's report was neither of these things. The IJ also faulted Tinizaray for failing to confer with Dr. Tuchin about the doctor's availability on June 26, but, since she was scheduled to be at a conference anyway, the failure to consult was not the cause of the doctor's unavailability, and Dr. Tuchin's conference schedule also is not Tinizaray's fault. Tinizaray had not previously asked for a continuance and the case was by no means old. The IJ's assumption that he would not make good use of a continuance had no basis in the facts and circumstances of the case. *See Ponce–Leiva,* 331 F.3d at 377 (issue of continuance "must be resolved on a case by case basis according to the facts and circumstances of each case").

Moreover, the prejudice to Tinizaray from exclusion of the report cannot be overstated. Congress created the relief of cancellation of removal under INA § 240A(b)(1) as part of the Illegal Immigration Reform and Immigrant Responsibility Act. IRRIRA's standard of "exceptional and extremely unusual hardship" is meant to be stringent. *See Matter of Andazola,* 23 I. & N. Dec. 319, 322 (BIA 2002) (en banc); *Matter of Recinas,* 23 I. & N. Dec. 467, 470 (BIA 2002) (en banc). In *Matter of Monreal,* 23 I. & N. Dec. 56 (BIA 2001), the Board found that, to establish "exceptional and extremely unusual hardship," an alien must show that the qualifying relative would suffer hardship substantially beyond that which would normally result from deportation. *Id.* at 60. *See also Andazola,* 23 I. & N. Dec. at 322. Nevertheless, the Board will consider "the ages, health, and circumstances of qualifying ... relatives." *Monreal,* 23 I. & N. Dec. at 63. An applicant with financially dependent elderly parents would have a strong case and so would an applicant who had a qualifying child "with very serious health issues, or compelling special needs in school." *Id.*

As part of her evaluation of Leslie, Dr. Tuchin, a well-qualified clinical psychologist, administered a battery of tests, spoke to Leslie's kindergarten teacher, and interviewed Tinizaray.[4] She then emphatically concluded that Leslie was "at risk" emotionally and academically, possibly as a result of her mother's improper behavior toward her. Dr. Tuchin described Leslie's case as "appreciably worse" than other similarly situated United States citizen children of parents who are subject to removal. She concluded that the case was "especially compelling," and that most aspects of Leslie's functioning would be negatively impacted by Tinizaray's removal because he appeared to be her only positive nurturing influence. It is hard to

---

**4.** Dr. Tuchin's curriculum vitae established her substantial qualifications. She received a Bachelor of Arts degree from Wellesley College, a secondary school teacher certification from Harvard University, a doctoral degree from Yeshiva University, and she did a one-year post-doctoral fellowship in neuropsychology at Yale University in the School of Medicine.

imagine a more powerful statement of exceptional and extremely unusual hardship.

We also do not fault Tinizaray for failing to produce Ms. Gonzalez. Under the circumstances of Dr. Tuchin's report, Tinizaray's explanation for her unwillingness to attend the hearing is satisfactory. The IJ remarked on the lack of evidence, but never once commented on the content of Dr. Tuchin's report, and summarily dismissed this evaluation which describes a real possibility that a qualifying relative—a child—would face an exceptional and extremely unusual hardship upon the removal of her nonresident alien parent. *See Monreal,* 23 I. & N. Dec. at 63 (applicant who has qualifying child with "very serious health issues, or compelling special needs in school" has strong case). This was not a case where no evidence was submitted. Dr. Tuchin's report is richly detailed, and any uncertainty the IJ may have had about the impact on Leslie of her father's removal from the United States could have been cured by granting a short continuance whereby the clinical psychologist could have been produced to offer testimony in support of the written report submitted.

Such persuasive evidence establishing merit is a circumstance that should have been taken into consideration and should have weighed in favor of granting a continuance, *see Ponce–Leiva,* 331 F.3d at 377. The IJ would not have been inconvenienced by a short continuance, and the need to consider Dr. Tuchin's evaluation clearly outweighed any considerations relating to the IJ's calendar. *See Baires,* 856 F.2d at 92. In *Hashmi,* we held that a denial of a continuance based on case-completion goals set by the Department of Justice, rather than on the facts and circumstances of the alien's case, was impermissibly arbitrary. 531 F.3d at 261. The reasoning of *Hashmi* applies here. A judge's calendar is a means to a prompt and fair disposition; it is not an end in itself. *Id.*

Furthermore, the granting of a continuance would not have prejudiced the government, and, in fact, the government gave every indication that it preferred the granting of a continuance. *Cf. United States v. McCoy,* 313 F.3d 561, 565–66 (D.C.Cir.2002) (en banc) ("good cause" inquiry typically considers adverse effect on opposing parties). Recognizing that denial of a continuance would severely and negatively affect the case, the government wanted only the opportunity to cross-examine Dr. Tuchin, and to question her about her findings and conclusions. It did not seek to exclude consideration of the report altogether.

Tinizaray has asked that we remand the matter to a different judge. We decline that request. Although we have found impermissible arbitrariness in the IJ's rigid adherence to the control order, nothing on the record suggests that the IJ cannot render an impartial decision on the merits of Tinizaray's cancellation of removal application. We express no view on the overall merits of the application, and leave that to the IJ in the first instance.

For the foregoing reasons, we will grant the petition for review, vacate the Board's decision, reverse the IJ's order denying a continuance, vacate the IJ's order denying the cancellation of removal application, and remand for further proceedings consistent with this opinion.