**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ISABEL GONZALEZ-VELIZ, *Petitioner*, v. MERRICK B. GARLAND, Attorney General, *Respondent*. | No. 19-72090 Agency No. A209-483-835 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 5, 2021
Pasadena, California

Filed May 4, 2021

Before:  Eugene E. Siler,[*] Andrew D. Hurwitz, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Siler

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

# SUMMARY[**]

## Immigration

The panel denied Isabel Gonzalez-Veliz's petition for review of a decision of the Board of Immigration Appeals dismissing her appeal from an order of an Immigration Judge deeming her application for asylum, withholding of removal, and Convention Against Torture abandoned, under 8 C.F.R. § 1003.47(c), based on her failure to submit required biometrics or establish good cause for her failure to do so.

The panel held that there was no abuse of discretion in the IJ's decision to deem Gonzalez-Veliz's application abandoned where the IJ instructed Gonzalez-Veliz, whose counsel was present, to complete biometrics requirements before her merits hearing, ensured that she had the relevant instructions, and warned her that her failure to comply could result in her application being deemed abandoned. The panel rejected Gonzalez-Veliz's argument that her duty to comply with biometrics requirements ended when she submitted the required application to the service center. The panel explained that the clear text of 8 C.F.R. § 1003.47(c) places the burden on the applicant to comply with biometrics requirements in conformity with the instructions to the application, which in turn direct the applicant to call a particular telephone number if she does not receive the requisite biometric receipt notices after her submission, which Gonzalez-Veliz failed to do. Because she never requested a continuance to complete the biometrics

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

requirement, and failed to follow up after she did not receive notices of receipt of her application, the panel concluded that Gonzalez-Veliz failed to show good cause for failing to meet the requirement. The panel also concluded that the IJ did not err in failing to question the government about whether it sent Gonzalez-Veliz the biometrics submission receipt notices, as the burden was on Gonzalez-Veliz to follow up when she failed to receive the notices.

The panel held that there was no abuse of discretion in the IJ's denial of Gonzalez-Veliz's earlier motion for a continuance to obtain an attorney where she knew of her right to hire an attorney, was given a two-month continuance to obtain counsel, was never detained, knew that the IJ would proceed with the next hearing even if she was unrepresented unless she showed good cause, did not try to contact an attorney before seeking the continuance, and was able to retain counsel months before her merits hearing.

The panel concluded that because Gonzalez-Veliz's application for relief was properly found abandoned, the Board correctly deemed moot any challenge to the IJ's denial of Gonzalez-Veliz's request for a continuance to obtain evidentiary support for her application.

The panel rejected Gonzalez-Veliz's contention that she was deprived of a neutral arbiter because, even assuming that the IJ was "rude and harsh," Gonzalez-Veliz failed to show that the IJ's conduct affected the outcome of proceedings.

## COUNSEL

Akram Abusharer (argued), Abushrarar & Associates, Anaheim, California, for Petitioner.

Clair L. Workman (argued), Senior Litigation Counsel; Keith I. McManus, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

SILER, Circuit Judge:

Isabel Gonzalez-Veliz claims that the Board of Immigration Appeals (BIA) erred in dismissing her appeal from an order of an Immigration Judge (IJ) finding her application for asylum, withholding of removal, and Convention Against Torture relief abandoned. Gonzalez-Veliz also argues that the IJ erred in denying two continuance requests, one for more time to obtain an attorney and one for more time to allow the submission of evidence helpful to her application. Finally, she contends that the IJ failed to act as a neutral arbiter. We deny her petition for review.

## BACKGROUND

Gonzalez-Veliz, a native and citizen of Guatemala, entered the United States in New Mexico, on or about October 19, 2016. The next day she was served with a

Notice to Appear charging her as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).[1]

On June 28, 2017, Gonzalez-Veliz appeared pro se before an IJ for her initial removal hearing. During this hearing, the IJ informed Gonzalez-Veliz of her right to an attorney at her own expense. The IJ provided Gonzalez-Veliz with a "list of nonprofit agencies and some private attorneys who have indicated that they may be willing to take a case for free or reduced fee." The IJ told Gonzalez-Veliz to "[c]all those offices" and described other ways she could find an attorney, including asking around her church and local community. Continuing the case to give Gonzalez-Veliz an opportunity to locate counsel, the IJ told Gonzalez-Veliz to find an attorney "right away" because the IJ would proceed with her case at the next hearing if she did not have a good excuse for failing to secure counsel. Gonzalez-Veliz affirmatively indicated she understood.

On September 8, 2017, Gonzalez-Veliz appeared at her next scheduled hearing without counsel. Gonzalez-Veliz stated she "couldn't get an attorney" because she was "sick" with "a lot of headaches," but acknowledged that she had not seen a doctor. Gonzalez-Veliz also claimed that she was prevented from locating an attorney because she began looking for a job a week before the hearing; she admitted, however, that she had not even tried to contact an attorney. The IJ found that Gonzalez-Veliz had not established good

---

[1] Gonzalez-Veliz's minor son is also listed as a petitioner in this case and was a respondent in the proceedings below as a "rider" on Gonzalez-Veliz's removal relief application. Because his claims are entirely derivative of his mother's, we do not discuss them separately.

cause for another continuance to find an attorney. The IJ then found Gonzalez-Veliz removable as charged.

The IJ engaged in a detailed discussion with Gonzalez-Veliz about filing an application for relief and the proof required for such an application, specifically mentioning the need for a declaration. The IJ told Gonzalez-Veliz that she needed to file her application by the next scheduled hearing, whether or not she had obtained counsel, or the application would be deemed abandoned absent a good excuse. Gonzalez-Veliz again affirmatively indicated that she understood.

On October 13, 2017, Gonzalez-Veliz appeared before the IJ, this time with counsel, and filed an application for asylum, withholding of removal, and Convention Against Torture protection. She did not submit the requisite declaration, but the IJ continued the case for a week to allow her to do so.

On October 20, 2017, Gonzalez-Veliz again appeared with counsel and submitted her declaration. The IJ then told Gonzalez-Veliz that she needed to submit biometrics before the merits hearing scheduled for February 8, 2018:

> IJ: Okay, ma'am, you also have to get your biometrics taken. That is your fingerprints and your photographs, your hair color, eye color, et cetera. If you fail to get your biometrics done before the next hearing, I will find that you have abandoned your application and I will deny it without the hearing. Do you understand?
>
> Gonzalez-Veliz: Yes.

> IJ: The government is providing you with written instructions on the steps that you must take to get your biometrics done. Take those with you and immediately start following those instructions. If you fail to get your biometrics taken before the next hearing, again, I will find that you have abandoned your application. Do you understand?
>
> Gonzalez-Veliz: Yes.

The biometrics instructions inform aliens that they must send three items to a particular address and that when the items are received the alien "will receive [a U.S. Citizenship and Immigration Services (USCIS)] receipt notice in the mail indicating that USCIS has received [the alien's] asylum application, and [a]n [Applicant Support Center (ASC)] notice for you, and separate [ASC] notices for each dependent included in [the alien's] application." The alien is instructed that if "you do not receive th[e ASC] notice in 3 weeks, call (800) 375-5283."

On January 16, 2018, Gonzalez-Veliz, through counsel, filed a motion for a continuance, explaining that she had not yet received requested police reports and court records needed to prove her removal relief case. The IJ denied the motion, finding that Gonzalez-Veliz "failed to show good cause or that she had not had sufficient [time] to obtain the evidence or to document her efforts to obtain the evidence."

On February 8, 2018, Gonzalez-Veliz appeared for the scheduled merits hearing. Her counsel, who allegedly was running late due to illness, did not appear at the scheduled hour. The IJ initially indicated that he would therefore

continue the case for another year, but then engaged in a discussion with Gonzalez-Veliz:

> IJ:  The government attorney has told me that you have not gotten your fingerprints done. Why is that?
>
> Gonzalez-Veliz:   The evidence that I was asked for?
>
> IJ:  No, your fingerprints, your biometrics, your photographs, your fingerprints, like we told you to do on October 20th.  Why haven't [you] gotten them done?
>
> Gonzalez-Veliz:  Well, to be honest, I am not really that aware of—familiar with it and my friend, the one that's guiding me, he works.
>
> IJ:  Ma'am, you sure are familiar with it.  The government attorney handed you written instructions on the steps to take.  I told you you needed to get the biometrics done.  I told you that if they weren't done, I would deny your case.  Why haven't they been done? Sheds a little more light on counsel's stomach ailments.   Why haven't you gotten your fingerprints done, ma'am?
>
> Gonzalez-Veliz:  Is that the evidence that I was asked for from back in Guatemala?
>
> IJ:  No, ma'am.  It is going and making an appointment to have your fingerprints and your photographs taken, following the

instructions you were given at the last hearing. For about the 4th time, do you have any explanation why you have not done that?

Gonzalez-Veliz: Well, the truth is that, well, as I say, I really did not understand as to that I had to do that or how to do that.

IJ: Any other explanation?

Gonzalez-Veliz: Well, I would like to apologize because, well, truthfully, I speak Spanish. My attorney speaks English and I have—I am able to communicate with him very little.

IJ: Ma'am, do you have any other explanation for why you did not get your fingerprints done, as you were told to do?

Gonzalez-Veliz: No.

The IJ then decided to hear Gonzalez-Veliz's case instead of rescheduling. Once counsel arrived, the following exchange occurred:

IJ: All right, counsel. [The Department of Homeland Security (DHS)] informed the court when we were originally here that respondent didn't get printed.

Counsel for Gonzalez-Veliz: We filed—

IJ: I asked respondent about that and she said she didn't know how to do it. You've given

me a document that is the instructions for submitting certain applications to immigration court. Attached to it and that's all it says and attached to it is part of a return receipt, certified mail. The—not the confirmation of receipt, the one that is sent. So do you have anything to show respondent actually got biometrics done?

Counsel for Gonzalez-Veliz: I do not have anything to show biometrics is done, judge. We use—we submitted the form, . . . the copy of the first three pages of the application to the service center. We assumed that they would respond to us prior to the merits calendar.

IJ: Well, counsel, why isn't the return receipt that you get back that confirms proof of receipt attached?

Counsel for Gonzalez-Veliz: I don't know why we didn't receive it, judge, but that's— this is all I have and we did make that filing after the first—our first master hearing appearance.

IJ: Well, if that's the case, why didn't you get alarmed by the fact that no appointment came in and no return receipt came back?

Counsel for Gonzalez-Veliz: We were alarmed about it, judge, and we—

IJ: Then, why wasn't the process redone?

Counsel for Gonzalez-Veliz: Because we didn't have time to do that process by the time we saw that that was an issue. We—when we make these filings—

IJ: By the time you saw that was an issue, counsel—first of all, there's no zip code written on here. Why would that be considered properly submitted, then?

Counsel for Gonzalez-Veliz: Judge, I believe that—

IJ: There's no A-number on the document.

Counsel for Gonzalez-Veliz: Which document?

IJ: The document you submitted to me. How do I know what was sent?

Counsel for Gonzalez-Veliz: Judge, this is what they send. I'm giving you proof of that this is what we did and I'm giving you evidence of when we mailed it.

IJ: You did not—counsel, you haven't given me proof of anything. There's no return receipt here. There's nothing on this to indicate it was done in respondent's case. There's certainly nothing to show it was received. What does it take to get a return receipt back? A week?

Counsel for Gonzalez-Veliz: Probably; maybe a week or two.

IJ: Two? That's pretty long. So if this was done in October and nothing came back, what was done to verify—to ensure that she got fingerprinted?

Counsel for Gonzalez-Veliz: [F]ollowing that filing, we didn't make a follow-up filing, judge. We were concerned with trying to get the documents and, you know, complete— and working on the process but we didn't look at the fingerprints again once we submitted it.

IJ: Well, then, isn't that on the respondent? Not getting fingerprinted?

Counsel for Gonzalez-Veliz: In my opinion? No, judge. It's not on the respondent.

IJ: No? It's not respondent's obligation to make sure she gets fingerprinted . . . . I'm saying that it is respondent's obligation to make sure it gets done. If it doesn't get done and if there's no response, it's respondent's obligation to make sure it gets done.

Counsel for Gonzalez-Veliz: I don't agree with that assessment, judge.

IJ: No?

Counsel for Gonzalez-Veliz: It's respondent's responsibility to take the steps necessary to get the fingerprinting process going. She can't force the government to get her fingerprinted. We sent that notice. We have the receipt. It shows the—you know, the tracking information on it. Like, the—we can try to verify exactly, like what happened with this posting but we did do our part.

IJ: Why didn't you try to do that, then?

Counsel for Gonzalez-Veliz: Why didn't— because we can't share—we don't chase around every single biometrics notice in the firm. That's not what—we don't—like, sometimes it is an issue. Sometimes, we have to send it twice or three times but in this particular case, you said—we, you know, we didn't think that it will be an issue. So, we said, "Okay." . . . "Let's set the merits date in February," and we did. Then, when we saw that we were having issues getting some of the documentations, we filed a motion to continue. At the time, we didn't see that we still—we didn't recognize that the biometrics receipt still hadn't been received. You denied the motion to continue, judge. If we—

IJ: Yes, counsel, because there was not any evidence shown to me of any efforts made to get the evidence.

Counsel for Gonzalez-Veliz: Okay, judge, but efforts were made to get the evidence.

IJ:   Well, counsel, respondent—there would be no Real ID Act if respondent could simply say efforts were made without corroborating the effort.

. . .

Counsel for Gonzalez-Veliz:   There is the Real ID Act, judge, and in order to comply with the requirements of the Real ID Act, we asked for that motion to continue and we recognized that you made an order requesting those documents.  Now, if that motion was granted, we wouldn't have this issue.  We probably—we could have followed up further on the case.

IJ:   Counsel, it is not my fault . . . . If respondent had gotten fingerprinted, we wouldn't have had this issue.  If respondent had followed up on the lack of getting a biometrics appointment, we wouldn't have this issue. . . . If respondent had documented efforts allegedly made to get evidence I requested, we might not have this issue.

Counsel for Gonzalez-Veliz:   Judge, I think the respondent attempted to get those documents.  We did our part in trying to get those fingerprints done.

. . .

IJ:   Where's the evidence that respondent tried to get the documents?

> Counsel for Gonzalez-Veliz:  I mean, there's her testimony.
>
> IJ:   Counsel, you don't corroborate your testimony with your testimony. There is no testimony.    There was no declaration submitted.

After this exchange, the government asked the IJ to find Gonzalez-Veliz's application abandoned because of her failure to obtain biometrics.  The government noted that the biometrics instructions explained that if the alien does not receive the requisite notice within three weeks of submission, she should follow up by calling a specific number.  The IJ reminded Gonzalez-Veliz that she "was told that if she didn't get her biometrics done in compliance with the instructions she was given, it would be considered abandoned."  Counsel for Gonzalez-Veliz then admitted to not following up with the biometrics request in accordance with its instructions.

The IJ found Gonzalez-Veliz's application abandoned. The BIA dismissed Gonzalez-Veliz's appeal.  We have jurisdiction of her timely petition for review pursuant to 8 U.S.C. § 1252.

**DISCUSSION**

## I.  Abandonment

The governing regulation makes plain that failure to provide biometrics "within the time allowed by the [IJ]'s order, constitutes abandonment of the application and the [IJ] may enter an appropriate order dismissing the application unless the applicant demonstrates that such failure was the result of good cause."  8 C.F.R. § 1003.47(c);

*see also* 8 C.F.R. § 1208.10 ("Failure to comply with processing requirements for biometrics . . . within the time allowed will result in dismissal of the application, unless the applicant demonstrates that such failure was the result of good cause."). An IJ's decision to deem an asylum application abandoned is reviewed for abuse of discretion. *Taggar v. Holder*, 736 F.3d 886, 889 (9th Cir. 2013).

At the October 20, 2017 hearing, the IJ twice warned Gonzalez-Veliz that if she did not provide her biometrics before the next hearing her application would be deemed abandoned. The IJ also noted that the government would be providing Gonzalez-Veliz with certain instructions on how to complete her biometrics and that Gonzalez-Veliz should "immediately start following" them.

Gonzalez-Veliz did not follow the instructions but argues that her duty to comply ended when she submitted the three items to USCIS. This argument is belied by the clear text of 8 C.F.R. § 1003.47(c), which places the burden on the alien "to . . . comply with the requirements to provide biometrics and other biographical information in conformity with . . . the instructions to the applications . . . and instructions provided by DHS, within the time allowed by the [IJ]'s order." The possibility of the government's failure to issue the requisite notices is contemplated by the instructions, which tell the alien to call a particular number if she does not receive the requisite notices after her submission. Our sister circuits have found that an IJ does not abuse his or her discretion in deeming an application abandoned when an alien fails to submit biometrics or provide good cause for not doing so. *See Ramirez-Coria v. Holder*, 761 F.3d 1158, 1160, 1162–63 (10th Cir. 2014); *Gomez-Medina v. Holder*, 687 F.3d 33, 35, 37–38 (1st Cir.

2012); *Umezurike v. Holder*, 610 F.3d 997, 999–1004 (7th Cir. 2010).  We agree.

Gonzalez-Veliz did not request a continuance before the February 8, 2018 merits hearing to complete her biometrics. Nor did counsel show good cause for requesting such a continuance on February 8.  Instead, counsel argued that if the IJ had granted a previous unrelated continuance request, the biometrics issue would have been discovered and dealt with.[2]  Moreover, far from showing good cause for failing to follow up on the biometrics submission after the government assertedly failed to send the requisite notice, counsel dismissively stated, "we don't chase around every single biometrics notice in the firm."  In contrast to *Karapetyan v. Mukasey*, 543 F.3d 1118 (9th Cir. 2008), and *Cui v. Mukasey*, 538 F.3d 1289 (9th Cir. 2008), there is no dispute that Gonzalez-Veliz received adequate notice of what she needed to do.  *See Karapetyan*, 543 F.3d at 1130–31 ("[A]s we have previously recognized [in *Cui*], the ability of otherwise diligent applicants, like [the alien], to comply with the fingerprint requirement was frustrated by the legal uncertainties surrounding the fingerprint laws. . . . [The alien] did not receive adequate notice regarding the fingerprint requirement."); *Cui*, 538 F.3d at 1294 ("There is no evidence that DHS delivered a fingerprint notice and instructions to [the alien], as is currently required under 8 C.F.R. § 1003.47.").

We therefore find no abuse of discretion in the IJ's decision to deem Gonzalez-Veliz's application abandoned. Her due process claim fails for the same reason.  *See Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020) ("To

---

[2] That January 16, 2018 continuance request was made specifically for the purpose of obtaining documents from Guatemala.

prevail on a due process challenge to deportation proceedings, [the alien] must show error[.]" (quoting *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000)); *see also Juarez v. Holder*, 599 F.3d 560, 566 (7th Cir. 2010) ("The petitioners also assert a rather vague due-process challenge to the denial of their motion for a continuance and the IJ's decision to deem their applications for relief abandoned. But immigration proceedings satisfy due process so long as they conform to the applicable statutory and regulatory standards, as these did." (citation omitted)).

## II. Denial of Continuances

### A. To Find an Attorney

There was no abuse of discretion in the denial of Gonzalez-Veliz's final request for more time to obtain an attorney. *See Arrey v. Barr*, 916 F.3d 1149, 1157–58 (9th Cir. 2019). Gonzalez-Veliz knew of her right to hire an attorney; was given a two-month continuance to obtain counsel; was never detained; knew that the IJ would proceed with the hearing even if she was unrepresented unless she showed good cause; but did not even try to contact an attorney before seeking the continuance. In any event, she was able to retain counsel months before her February 8 merits hearing. *Compare id.* at 1158 & n.3 (finding no abuse of discretion where IJ granted three continuances over two months to acquire an attorney and warned the alien that her case would not be continued any further), *with Biwot v. Gonzalez*, 403 F.3d 1094, 1099–1100 (9th Cir. 2005) (finding abuse of discretion because alien was given only five total business days from two granted continuances to locate an attorney while incarcerated and made "diligent" efforts to obtain counsel), *and Rios-Berrios v. INS*, 776 F.2d 859, 862–63 (9th Cir. 1985) (finding abuse of discretion because alien was given only two total business days from

two granted continuances to locate attorney while incarcerated).

## B. To Obtain Corroborating Evidence

Because Gonzalez-Veliz's application for relief was properly found abandoned, the BIA correctly deemed moot any challenge to the denial of Gonzalez-Veliz's previous request for a continuance to obtain evidentiary support for her application. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach." (citations omitted)).

## III. Neutral Judge

Gonzalez-Veliz was not deprived of her right to a neutral arbiter. *See Reyes-Melendez v. INS*, 342 F.3d 1001, 1006 (9th Cir. 2003). Even assuming that the IJ was "rude and harsh," Gonzalez-Veliz "must show that the denial of . . . her right to a neutral fact-finder 'potentially affected the outcome of the proceedings.'" *Arrey*, 916 F.3d at 1159 (citation omitted).

The IJ permitted Gonzalez-Veliz to file her application for relief, gave her ample opportunity to present her case, and explained in detail what evidence she needed to submit to prove her case despite candidly stating that prevailing would be "difficult." *See Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006) ("Although the IJ showed impatience at times, [the alien] had ample opportunity to present his case, and the record as a whole does not suggest that the IJ did not conduct the hearing with an open mind."). Gonzalez-Veliz's suggestion that the IJ inappropriately assumed the role of the government by questioning her, particularly when she appeared pro se, is unavailing. *See*

*Shoafera v. INS*, 228 F.3d 1070, 1075 (9th Cir. 2000) ("[W]e have recently noted that the duty of the [IJ] is analogous to that of the administrative law judge in social security disability cases and thus, the IJ has a duty to fully and fairly develop the record." (citation and internal quotation marks omitted)).  The IJ may have expressed frustration at times, but his questioning was compliant with the court's duty to "fully and fairly develop the record."  Nor did the IJ err in failing to question the government about whether it sent the biometrics submission receipt notices, as the burden is on the alien to follow up if the notice is not received.  *See* 8 C.F.R. § 1003.47(c).

**PETITION DENIED**.