NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 15 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JULIO CESAR HENRIQUEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No. 19-71245

Agency No.
A072-309-179

MEMORANDUM*

JULIO CESAR HENRIQUEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No. 21-1049

Agency No.
A072-309-179

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| JULIO CESAR HENRIQUEZ-AMAYA, | No. 23-219 |
| --- | --- |
| Petitioner, | Agency No. A038-833-650 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 5, 2024
Pasadena, California

Before: WARDLAW, FRIEDLAND, and SUNG, Circuit Judges.
Concurrence by Judge WARDLAW.

In three consolidated petitions, Julio Cesar Henriquez-Amaya ("Henriquez")

seeks review of three decisions of the Board of Immigration Appeals ("BIA").

Henriquez was lawfully admitted to the United States in 1984. In 1985, he

was convicted of a sex crime involving a minor under California law, a conviction

that would later be vacated. In 1987, the Immigration and Naturalization Service

opened deportation proceedings against Henriquez based on his conviction. He

was deported; he then reentered the United States in 1989.

In 2015, the Department of Homeland Security ("DHS") opened removal

proceedings against Henriquez, alleging that he was unlawfully present in the United States under 8 U.S.C. § 1182(a)(6)(A)(i).[1]  Henriquez conceded removability but applied for asylum, withholding of removal, and protection under the Convention Against Torture.

The immigration judge ("IJ") ruled that Henriquez's applications were barred by res judicata because they could have been raised in his prior deportation proceedings.  The BIA reversed in part and remanded for the IJ to consider Henriquez's applications to the extent they raised issues post-dating his prior deportation.  On remand, the IJ set a deadline for Henriquez to submit evidence in support of his applications and scheduled an individual merits hearing.  After the deadline to submit evidence and about two weeks before the scheduled hearing, Henriquez's counsel filed a motion for a continuance, explaining that he had not realized that the scheduled hearing was on the merits.  A few days later, the IJ denied the motion for a continuance.  At the hearing six days after the denial, counsel renewed the motion for a continuance, which the IJ again denied. Henriquez then refused to testify.  In a written decision, the IJ ruled that Henriquez had abandoned his previously submitted applications by refusing to testify, and in the alternative that the applications failed on the merits.  The BIA affirmed the IJ's

---

[1] DHS did not seek to reinstate the prior deportation order because it initially could not locate the relevant file.

denial of a continuance and conclusion that Henriquez abandoned his applications, without reaching the merits of the applications. The first petition at issue here, No. 19-71245, seeks review of that BIA decision.

In 2016, Henriquez moved to vacate his 1985 state conviction and withdraw his guilty plea under a state statute requiring a court to grant such a motion where a noncitizen was not advised of the possible immigration consequences of pleading guilty or nolo contendere. *See* Cal. Penal Code § 1016.5. In 2018, during the pendency of Henriquez's appeal of the removal order to the BIA, his state conviction was vacated and the charge against him was dismissed.

About seven months later, and less than one month after the BIA issued its decision in his removal proceedings, Henriquez moved to reopen the removal proceedings before the BIA based on the vacatur of his conviction. The BIA denied reopening, explaining that the vacatur of his conviction was not material to the removal proceedings because his removability was not based on that conviction. The second petition at issue here, No. 21-1049, seeks review of that BIA decision.

A few months after the BIA denied his motion to reopen the removal proceedings, Henriquez filed a motion to reopen the prior deportation proceedings based on the vacatur of his conviction. The BIA denied that motion as well, reasoning that it was untimely and that relief from the deadline was not warranted

4

due to Henriquez's lack of diligence. The BIA also declined to reopen sua sponte because Henriquez had not shown exceptional circumstances warranting reopening. The third petition at issue here, No. 23-219, seeks review of that BIA decision.

We have jurisdiction under 8 U.S.C. §§ 1252(a)(1), (b)(6), and we deny the petitions.

1. In the first petition, No. 19-71245, Henriquez contends that the BIA erred in concluding that he had not established good cause for a continuance and that by refusing to testify he had abandoned his applications for asylum, relief under the Convention Against Torture, and withholding of removal.

We review a denial of a request for a continuance for abuse of discretion. *Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009). On July 14, 2017, the IJ scheduled an individual hearing on the merits of Henriquez's applications for relief for September 27, 2017. Henriquez's counsel moved for a continuance on September 14, 2017, stating that he had failed to realize that the hearing scheduled for September 27, 2017, would be an individual hearing on the merits of Henriquez's claim. Counsel claimed responsibility for the mistake, acknowledged that he had not filed any evidence or declarations, and requested "more time to file additional evidence." The motion did not specify the length of the requested continuance, but implied that a hearing might be held as soon as October 3, 2017,

less than one week later than the scheduled hearing.

The IJ denied Henriquez's request for a continuance on September 21, 2017, stating that Henriquez and his counsel were served notice of the hearing, and finding (without further explanation) the explanation of the purported mistake not to be credible. At the hearing on September 27, 2017, Henriquez renewed his motion for a continuance without further elaboration. The IJ orally denied the renewed motion, reiterating that he found the written motion not credible. In a subsequent written ruling, the IJ found the assertions that counsel was unaware of the nature of the hearing not to be credible because counsel was aware of the hearing itself and the only notice of the hearing included the nature of the hearing. The BIA affirmed, acknowledging that the IJ had provided only an "abbreviated time period" in which to obtain supporting evidence, but concluding that Henriquez had not explained why he could not have prepared his testimony during the 13-day period between when his counsel claimed he became aware of the nature of the hearing and the scheduled hearing date.[2]

The BIA did not abuse its discretion in concluding that Henriquez failed to establish good cause for a continuance. *See* 8 C.F.R. § 1003.29. We review the

---

[2] Contrary to the IJ's credibility determination, the BIA assumed that Henriquez's counsel had, in fact, "credibly and in good faith overlooked" that the hearing would be a merits hearing, and assumed that the error was attributable solely to counsel. Henriquez does not contend that the BIA erred in making this assumption contrary to the IJ's credibility finding.

denial of a continuance on "a case by case basis" and consider "a number of factors, including: (1) the nature of the evidence excluded as a result of the denial of the continuance, (2) the reasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted." *Ahmed*, 569 F.3d at 1012. "[W]e have cautioned that a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render [a noncitizen's] statutory rights merely an empty formality." *Baires v. I.N.S.*, 856 F.2d 89, 91 (9th Cir. 1988) (quotation marks omitted).

Here, the first factor weighs strongly against Henriquez because he has never provided specific information about the evidence he would have presented but for the denial of a continuance. Instead, Henriquez simply asserts that his case is "extremely complicated." Without any explanation of the information he would have provided if granted a continuance, it is impossible to "evaluate[] the importance of the evidence excluded as a result" of the denial of the continuance. *Ahmed*, 569 F.3d at 1013–14.

The second factor weighs against Henriquez as well. Assuming, as the BIA did, that the initial failure to recognize the nature of the scheduled hearing was solely his counsel's error, Henriquez still acted unreasonably because he failed entirely to prepare to testify in support of his applications for relief and instead merely renewed his request for a continuance without providing any new detail.

23-219

The third and fourth factors both weigh in Henriquez's favor. The record does not suggest that there would have been any significant inconvenience to the court in granting a short continuance, and no prior continuance of the hearing in question had been granted. But any tilt in Henriquez's favor on the third and fourth factors is far outweighed by the first factor and, for his renewed motion, the second factor. Taken together, it was not an abuse of discretion to deny Henriquez's requests for continuances because he had not shown that his requests to delay the hearing were "justifiable." *Baires*, 856 F.2d at 91.

Once his renewed motion for a continuance was denied, Henriquez declined to offer any testimony at the hearing on the merits of his applications for relief. Henriquez contends that the BIA's conclusion that he abandoned his applications for relief was an abuse of discretion because his refusal to testify was caused by the denial of the motion for a continuance. We review the conclusion that a noncitizen abandoned his or her applications for relief for abuse of discretion. *Gonzalez-Veliz v. Garland*, 996 F.3d 942, 948 (9th Cir. 2021).

As explained above, Henriquez did not show good cause for a continuance. His desire for a continuance cannot itself excuse his failure to testify.[3] Without a sufficient reason to refuse to testify, it was not an abuse of discretion for the BIA to

---

[3] Had Henriquez shown good cause for a continuance, his refusal to testify would not have constituted abandonment of his applications. *See Kaur v. I.N.S.*, 237 F.3d 1098, 1101 (9th Cir. 2001).

conclude that he abandoned his applications. An applicant for asylum and withholding of removal "need not testify on his or her own behalf, *except* to swear to the truth of the application, and may rest on the application alone, *subject to [the Government's] examination* at the hearing." *Grava v. I.N.S.*, 205 F.3d 1177, 1180 (9th Cir. 2000) (emphases added); *see* 8 C.F.R. § 1240.49(c)(4)(iii) (an applicant for asylum or withholding of removal "shall be examined under oath on his or her application").[4] Henriquez unjustifiably refused to participate in a required step of the adjudication of his applications for relief, so it was not an abuse of discretion to conclude that he had abandoned his applications. At oral argument in our court, Henriquez's counsel suggested that he made a strategic decision to advise Henriquez not to testify and suggested that strategy was necessary to preserve the argument for a continuance. If so, it was a bad strategy, because it caused the agency to reasonably (and foreseeably) consider the claim to have been abandoned, and because it was not necessary to preserve the continuance argument.

Henriquez also asserts that going forward with a hearing for which he was unprepared violated due process. We review claims of due process violations in removal proceedings de novo and reverse "if the proceeding was so fundamentally unfair" that the noncitizen "was prevented from reasonably presenting his case."

---

[4] Henriquez's application for relief under the Convention Against Torture is an "application for withholding of removal." 8 C.F.R. § 208.16(a).

*Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000) (quotation marks omitted). A noncitizen must "show prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Id.* Without any information about what further preparation he would have done with more time or what evidence he would have presented at a later hearing, Henriquez's bare assertions that he was unprepared cannot show prejudice.

2. In the second petition, No. 21-1049, Henriquez contends that the BIA erred in denying the motion to reopen that he filed in the current removal proceedings. The BIA can deny a motion to reopen if the evidence offered in support was not "previously unavailable" or is not "material evidence." *Fonseca-Fonseca v. Garland*, 76 F.4th 1176, 1180 (9th Cir. 2023) (quotation marks omitted). We review denials of motions to reopen for abuse of discretion. *Id.*

The BIA denied Henriquez's motion to reopen because vacatur of the state conviction underlying his original deportation order was not previously unavailable and was not material to the proceedings in which Henriquez filed the motion. It was not an abuse of discretion for the BIA to conclude that the vacatur of Henriquez's conviction was not material to the removal proceedings because the vacatur itself did not change his conceded removability.

Henriquez suggests that the 2018 vacatur of the conviction underlying his prior deportation order is material to his current removal proceedings because the

vacatur means that he has always been a lawful permanent resident. Where a noncitizen's "lawful permanent resident status ends upon entry of a final administrative order of deportation," he is "restored to his prior status" when "the BIA grants a motion to reopen, or a reviewing court holds that the BIA should have granted a motion to reopen" that deportation proceeding. *Bonilla v. Lynch*, 840 F.3d 575, 589 (9th Cir. 2016) (explaining that, upon reopening, "the final deportation order is vacated—that is, it is as if it never occurred"). But reopening of the present *removal* proceedings would have had no such effect, because it would not reopen the deportation proceedings that had been based on Henriquez's conviction. Because the vacatur itself did not restore Henriquez's status as a lawful permanent resident, it is not material to whether he unlawfully reentered the country in 1989, which is the basis on which Henriquez conceded that he was removable in the recent proceedings.

3. In the third petition, No. 23-219, Henriquez appeals the BIA's denial of his motion to reopen his prior deportation proceedings. The BIA denied that motion to reopen as untimely. *See* 8 U.S.C. § 1229a(c)(7)(C)(i) (requiring that a motion to reopen "be filed within 90 days of the date of entry of a final administrative order of removal," except in circumstances not applicable here). The BIA concluded that an exception to the 90-day deadline was not warranted because Henriquez had not been diligent in pursuing the motion to reopen. *See* 8

C.F.R. § 1003.2(c)(3)(v) (providing an exception to the 90-day deadline where there is a material change in fact or law and the noncitizen exercised diligence in pursuing the motion to reopen).

It was reasonable for the BIA to conclude that Henriquez had not been diligent given that he had waited almost nine months after the BIA denied his motion to reopen the removal proceedings before he filed his motion to reopen the deportation proceedings (by which time nearly four years had passed since the vacatur of his conviction).

The BIA also declined to reopen Henriquez's deportation proceedings sua sponte, explaining that Henriquez had not established an exceptional situation warranting such reopening because he moved for reopening decades after his deportation, sought to rely on equities developed after unlawfully reentering the country, and was the subject of other ongoing removal proceedings. We have jurisdiction over a denial of sua sponte reopening only "for the limited purpose of reviewing the reasoning behind the decision[] for legal or constitutional error." *Bonilla*, 840 F.3d at 588. Henriquez contends that the BIA's conclusion is unfair in light of the vacatur of his conviction, but he does not point to any legal or constitutional error in the BIA's reasoning.

\*    \*    \*

Henriquez's counsel contended at oral argument that Henriquez "had a right

to have his day in court and to be heard for his asylum case and not be affected by his counsel's deficiencies, which were admitted to on the record." No doubt counsel's deficiencies made it easier for the BIA to deny Henriquez relief. But counsel has not identified any ground on which, under the applicable standards of review, we could conclude that the BIA erred in considering the choices made by Henriquez and his counsel.

For the foregoing reasons, the three petitions are **DENIED.**

*Henriquez-Amaya v. Garland*, Nos. 19-71245, 21-1049, 23-219

WARDLAW, Circuit Judge, with whom SUNG, Circuit Judge, joins, concurring:

I concur with the court's well-reasoned decision to deny the petitions in this consolidated case. I write separately to underscore the ineffective assistance of counsel that has resulted in the court's decision today.

Julio Henriquez-Amaya ("Henriquez") is a sixty-eight-year-old native and citizen of El Salvador. With the apparent exception of less than one month in 1989, Henriquez has lived in the United States since 1974—that is, for approximately half a century and for nearly three-fourths of his life.[1] Henriquez's sole conviction, from 1985, was vacated in 2018. If the government deports Henriquez to El Salvador, Henriquez will leave behind his U.S. citizen spouse, his U.S. citizen grandchildren, his U.S. citizen children, and his U.S. citizen mother. On top of it all, we were informed by counsel at oral argument that Henriquez is suffering from stomach cancer.

The government inexplicably has elected to use its limited resources to prioritize the deportation of a man whom the government acknowledges is not a removal priority. But Henriquez would not be in this situation if it weren't for the errors of his lawyer. Henriquez's lawyer has acknowledged that he made multiple

---

[1] The record reflects that Henriquez first entered the United States in 1974, when he was nineteen years old. Henriquez was admitted for lawful permanent residency in 1984. It is unclear whether he departed at any time between his arrival in 1974 and his grant of lawful permanent residency status in 1984.

1

errors in Henriquez's case. Most significantly, Henriquez's lawyer failed to exercise reasonable diligence to inform the BIA that Henriquez's conviction, which formed the basis of Henriquez's 1988 deportation order, was vacated in 2018. Henriquez's lawyer learned about the vacatur in December 2018 while Henriquez's direct appeal to the BIA was pending. But the lawyer did not ask the BIA to take notice of the vacatur. Instead, he waited until the BIA dismissed Henriquez's direct appeal in April 2019 before filing a motion to reopen in May 2019—approximately five months after he first learned that the conviction had been vacated.

Even after the BIA in October 2021 informed Henriquez's lawyer that he had improperly filed the motion to reopen in the removal proceedings rather than the deportation proceedings, Henriquez's lawyer unreasonably waited an additional nine months before filing a motion to reopen in the correct proceedings. The BIA was within its right to deny that motion to reopen. But it likely would have granted the motion had Henriquez's lawyer exercised reasonable diligence in informing the BIA that the conviction underlying Henriquez's deportation order had been vacated.

Henriquez's lawyer acknowledged at oral argument that his performance in this case has been deficient. Based on his lawyer's deficient and undoubtedly prejudicial performance, Henriquez may be entitled to file a motion to reopen before the BIA in the deportation proceedings with an accompanying request for a stay of removal. The government may even consider joining any such motion or request.

2

Although "[m]otions to reopen are disfavored due to the strong public interest in bringing litigation to a close," *Sarkar v. Garland*, 39 F.4th 611, 621 (9th Cir. 2022) (internal quotation marks omitted), that interest in finality must be balanced against the enormous public interests in keeping families together, supporting long-term residents of the United States (especially those of older age and ill health), and avoiding the manifest injustice attendant to deportations based on ineffective assistance of counsel. *See Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011) ("If the ineffective assistance of an alien's counsel prevents him from timely filing a motion to reopen, counsel has prevented the alien from reasonably presenting his case and denied him due process."); *see also Iturribarria v. INS*, 321 F.3d 889, 898 (9th Cir. 2003) ("[A] motion to reopen is the only avenue ordinarily available to pursue ineffective assistance of counsel claims.").

I respectfully concur.